14

[Civ. No. 14264.   Second Dist., Div. Two.   Dec. 20, 1943.]

SUSIE MYLES, Appellant, v. LOS ANGELES RAILWAY
CORPORATION (a Corporation), Respondent.

Clarence A. Jones for Appellant.

Gibson, Dunn & Crutcher and E. H. Chapman for Respondent.

WOOD (W. J.), J.—Plaintiff has appealed from an order of the trial court granting defendant's motion for a new trial after a jury had returned a verdict in favor of plaintiff in the sum of $5,000. The new trial was granted on the ground of the insufficiency of the evidence to justify the verdict. On this appeal plaintiff contends that the court abused its discretion in granting the motion.

Plaintiff testified that on September 3, 1941, accompanied by two friends, she attempted to board a southbound streetcar operated by defendant at the intersection of Twelfth Street and Central Avenue in Los Angeles; that while she was attempting to board the car it started and caused her to be dragged for some distance along the pavement. Plaintiff narrated the circumstances of the accident: "Well, I was supposed to go to the show, that is where I started to go .to the show, so I came across the street to catch the car and I stood in the safety zone. The car stopped. Just as I went to mount the car or board the car, the car—I got on the back steps of the car and before I could get on the car, the car started. Well, that threw my feet off the steps but I still held on the support of the car with my hands. My feet was dragging but I still had hold of the car. Q. Then what happened? A. Well, the car didn't stop. Well, my right hand gave way and I still had hold of the rails with the left hand, see, while praying for the car to stop, hoping that it would. Well, they drug me quite a ways. Well, then my left hand gave way, this arm was dragging already (indicating). Well, when I fell loose from the car my arm, my right knee, was

tore, my clothes was tore off this arm this side and my arm and my knee was bleeding (indicating). Q. Then what happened—— A. I beg your pardon? Q. Then what happened after that? A. What happened? Well, after I fell away from the car there was some men they rescued me to the sidewalk. They helped me to the sidewalk. They picked me up out of the street and rescued me to the sidewalk.'' Plaintiff's testimony was corroborated by the testimony of her two friends and by that of another witness, who had not been on the street car. One of the friends, Mrs. Shaw, testified that when the car failed to stop she boarded a following streetcar and rode on it to 46th Street. At that point she engaged a *Black and White* cab and rode to the end of the line. On cross-examination she testified that the cab in which she had ridden was a *Yellow* cab. Upon arrival at the end of the line she boarded the car from which plaintiff had fallen and took the number of the car, 316. She also took the number of the conductor's cap, which also was 316. She did not say anything to the conductor about the accident and had no conversation with him.

The action was commenced by plaintiff seven months after the accident and, according to its evidence, defendant had no information whatever until then that there was a claim that anyone was injured at the time and place alleged in the complaint. By that time the conductor in charge of car 316 on September 3, 1941, had left the employ of defendant and had gone to Tennessee. The motorman in charge of the car, William R. Gibson, testified that he had consulted the company records to refresh his recollection; that nothing of an unusual nature occurred at the time and place alleged in the complaint and that he saw nothing indicating that anyone had fallen while attempting to board the car. S. J. Singer testified that he had been working for defendant in various capacities for many years; that cap number 316 had been worn by him continuously for seventeen years and that such a number had never been issued to anyone else; that he did not act as a conductor for defendant during the year 1941.

Defendant presented proof that it had attempted to take the deposition of plaintiff by subpoena and by stipulation but that it had been unable to do so and that it had been unable to secure a medical examination. A search of the various directories failed to disclose the residence of plaintiff. On three occasions one of defendant's attorneys attempted

to arrange with plaintiff's counsel to take the deposition of plaintiff but on each occasion plaintiff's counsel stated that he did not know the whereabouts of plaintiff. At the trial plaintiff testified that she had lived at 1128 East 14th Street in Los Angeles since January, 1942, and had never left the city at any time during that period.

The rules governing the conduct of the trial court in passing upon motions for new trials and the rules governing the conduct of the reviewing court after action by the trial court are well established. █ A motion for a new trial is directed to the sound discretion of the trial judge, who must pass upon the credibility of the witnesses and the weight and probative force of their testimony. █ The trial court was not bound to accept as true the testimony of plaintiff's witnesses. █ Positive testimony may be contradicted by inherent improbabilities appearing therein and by inconsistent and inaccurate statements of the witnesses. The court may take into consideration all the circumstances shown in evidence in connection with the matter pending. (*Davis* v. *Judson,* 159 Cal. 121, 128 [113 P. 147].) █ Although the court may not arbitrarily reject the testimony of witnesses, it may weigh their testimony in the light of all the surrounding circumstances and if it concludes that the preponderance of the evidence is with the party presenting the motion for a new trial its action in granting the motion will not be disturbed on appeal where from all the evidence in the case a probable justification appears for discrediting the testimony of the witnesses for the party opposing the granting of the motion. (*Otten* v. *Spreckels,* 24 Cal.App. 251 [141 P.224] ; *Owings* v. *Gatchell,* 32 Cal.App.2d 482 [90 P.2d 268].) █ This court may not place itself in the position of the trial court and weigh the evidence. █ Our function is to determine whether the trial court acted within its discretion when it discredited the testimony presented by plaintiff. With commendable frankness plaintiff's counsel refers to the rule that the discretion with which the trial court is vested in granting a new trial upon the ground of the insufficiency of the evidence to uphold the verdict will not be deemed to have been abused unless a decision in favor of the moving party would have no substantial support in the evidence. (*Laverne* v. *Dold,* 17 Cal.App.2d 180 [61 P.2d 497].) It cannot be held that a verdict for defendant in the instant case would be lacking in evidentiary support.

18

We are satisfied that the court did not abuse its discretion in granting the new trial. The case will probably come before the trial court again with another jury and we consider it inappropriate under the circumstances of this case to specify and discuss the various matters in evidence and the inferences to be drawn therefrom (set forth in defendant's brief) which may have impelled the court to grant the new trial.

The order is affirmed.

Moore, P. J., and McComb, J., concurred.