[No. B201218. Second Dist., Div. One. Feb. 5, 2009.]

DENISE EASTERBY et al., Plaintiffs and Appellants, v. STEPHEN W. CLARK et al., Defendants and Appellants; CHRISTOPHER DELEDONNE, Defendant and Respondent.

COUNSEL

Law Offices of Milan Moacanin, Milan Moacanin; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiffs and Appellants.

Ford Walker Haggerty & Behar, William C. Haggerty, Paul J. Christensen and Maxine J. Lebowitz for Defendants and Appellants.

Bonne, Bridges, Mueller, O'Keefe & Nichols, Brian L. Hoffman and Vangi M. Johnson for Defendant and Respondent.

OPINION

BAUER, J.[*]—Plaintiffs Denise Easterby and her husband appeal from a judgment entered in favor of defendants Dr. Stephen W. Clark doing business as Spring Dental Group (Spring Dental Group), Nizar Laouiti, and Dr. Christopher Deledonne in their action for dental malpractice, general negligence, and loss of consortium. Plaintiffs contend the trial court committed reversible error when it excluded their expert's testimony on causation at trial. Defendants Spring Dental Group and Laouiti appeal from a postjudgment order granting plaintiffs' motion to tax expert witness fees.

We agree the trial court committed reversible error by excluding plaintiffs' expert testimony and accordingly reverse the judgment in favor of defendants

---

[*] Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

and remand for further proceedings. We further dismiss the appeal by defendants Spring Dental Group and Laouiti as moot.

## BACKGROUND

On March 2, 2004, Laouiti, a dental assistant, stepped on a wire connected to an X-ray sensor that was in Easterby's mouth.[1] Easterby's head jerked to one side, she felt pain on the right side of her neck, and she later went to the emergency room where a physician prescribed pain medication. Over the next 18 months, Easterby felt pain in her neck, back, and shoulders and numbness in her left hand. Both her family practitioner and her internist prescribed pain medication and regular physical therapy. Neither treatment alleviated her pain.

Easterby's internist referred her to Dr. John Regan, an orthopedic surgeon. Regan determined that Easterby suffered from a degenerative condition of the cervical spine and that she had compressed spinal nerves and herniated disks. Regan performed surgery to reduce the nerve compression. A year later, Easterby reported that she was "doing very well" despite occasional muscle spasms. Easterby and her husband sued Laouiti, his employer Spring Dental Group, and Easterby's dentist Deledonne for dental malpractice, general negligence, and loss of consortium.

In September 2006, defendants deposed Regan. During the deposition, defense counsel asked Regan: "[T]his is our one opportunity to take your deposition as a designated medical legal expert. [¶] Have you formulated opinions on the subject of causation as it pertains to Denise Easterby and the alleged events of March 2nd, 2004?"[2] Regan replied: "I have not been asked to do that." Defense counsel further asked: "And doctor, you cannot state to a reasonable degree of medical probability that as a result of the alleged event on March 2nd, 2004, that this patient required surgery, correct?" Regan replied: "Correct." Plaintiffs' counsel followed up with: "Do you know . . . what caused the surgical procedure, a trauma or something else?" Regan replied: "I don't know what caused it."

In January 2007, approximately three months before the start of trial, plaintiffs sent defendants the following correspondence: "This is to advise you that John J. Regan, M.D. has read his deposition taken on September 12, 2006, and will not make any changes. This is also to advise you that

---

[1] For brevity, we will hereinafter refer to the March 2, 2004 incident as the "dental incident."

[2] The record does not contain a copy of the deposition transcript for our review. We quote from defense counsel's oral recitation of the deposition transcript at trial, which plaintiffs do not contend is inaccurate.

subsequent to his deposition, Dr. Regan received a letter dated September 14, 2006 from Greta A. Wanyik, M.D. Said letter confirms that reference to an automobile accident involving plaintiff Denise Easterby in March of 2004, was a mistake and that plaintiff does not have a history of an automobile accident in March of 2004 . . . . *Consequently, Dr. Regan will testify at trial that to a reasonable degree of medical probability the event of March 2, 2004, led to plaintiff's surgery.*"[3] (Italics added.) Defendants did not depose Regan after receiving this letter.

A week before the start of trial, defendants, citing *Kennemur v. State of California* (1982) 133 Cal.App.3d 907 [184 Cal.Rptr. 393] (*Kennemur*) sought in limine order "limit[ing] the trial testimony of plaintiff's expert[s] to those opinions and conclusions specifically articulated at the time of their depositions, and preclud[ing] plaintiff from providing them with additional information, available but not provided at the time of their depositions." Plaintiffs did not oppose the motion.

During direct examination at trial, Regan testified at length about the nature of Easterby's condition and how surgery alleviated much of the pain she felt in her neck, back, and shoulders. At one point, plaintiffs' counsel implied through a question that the dental incident caused Easterby to have a pinched nerve. The trial court sustained defense counsel's objection, and plaintiffs' counsel followed up with: "What is the cause of that? Why did you do the surgery? What did it happen [*sic*] to cause the surgery?" Regan answered: "Well, the patient, Denise, had a degenerative condition of the cervical spine. She had a condition of aging of the cervical spine that had bone spurs . . . . [¶] The question really is[,] did this incident produce a problem that then requires surgery that would not get better without surgery[?] And my feeling is that she had an injury. She went to the emergency room, complaining of neck pain. She had conservative treatment. The treatment did not help her, and this is what eventually led to her needing surgery." Defense counsel did not object to the question or move to strike Regan's answer.

During cross-examination, Regan testified that he had not reviewed Easterby's patient history, medical records, or X-rays predating March 2004. Defense counsel showed Regan various excerpts of Easterby's medical history in which she complained of pain, compression, and injury in her neck and back stemming from multiple automobile accidents and a trip-and-fall predating March 2004. Defense counsel then asked: "Can you state to a reasonable degree of medical probability, based on all that you've seen, that

---

[3] Apparently, Wanyik, Easterby's internist, wrote in her patient history file that Easterby was rear ended in an automobile accident in March 2004, when no such accident had occurred. She notified Regan of this mistake in Easterby's records after his deposition.

this woman's surgery that you performed was necessitated because of the event of March 2nd, 2004?" Regan replied: "No." Counsel followed up with: "And you don't know, doctor, whether the pathology that you addressed at your March 27th, 2006 surgery was preexistent to that March 2nd, 2004 event; isn't that right?" Regan replied: "Yes."

Court reconvened after lunch, and on redirect examination, Regan backed off from the testimony he provided during cross-examination. He explained that because he was not able to view the actual X-rays that were taken of Easterby's vertebral column before March 2004, the only information he could rely on was Easterby's description of her pain. Easterby reported to Regan that she was "asymptomatic" before the dental incident. After the dental incident, Easterby reported to Regan that she felt extreme pain, pain that could only be alleviated through surgery. Based on this report, Regan opined that "it was a medical probability that [the dental incident] was a cause of her eventual surgery."

Regan further testified that he did not provide an opinion on causation at his deposition because he was "confused" about why defense counsel kept referring to a "dental chair accident." Regan explained that at the time of his deposition, he believed Easterby had been involved in a vehicle accident in March 2004 based on erroneous information in her medical records. Once Easterby's internist corrected the error and clarified that Regan sought treatment because of pain from the dental incident, and not from an automobile accident, Regan believed he could offer an opinion on causation at trial.

On the next day of trial, defendants moved to strike all of Regan's testimony on causation, citing *Kennemur, supra*, 133 Cal.App.3d 907, and the in limine order restricting Regan's trial testimony to the opinions he offered at his deposition. The trial court granted defendants' motion and indicated that it would instruct the jury to "disregard Dr. Regan's testimony that the dental incident caused injury and surgery." Based on this ruling, defendants moved for nonsuit, which the trial court granted.

After trial, defendants filed their memorandum of costs, which included expert witness fees pursuant to Code of Civil Procedure section 998.[4] Plaintiffs filed a motion to tax the expert witness fees, which the trial court granted. Plaintiffs timely appealed from the final judgment, and defendants timely appealed from the court's postjudgment order.

---

[4] We discuss the facts pertinent to defendants' Code of Civil Procedure section 998 offers in the section addressing that issue.

## DISCUSSION

I. *Exclusion of Regan's Testimony*

Plaintiffs contend the trial court committed reversible error in striking Regan's testimony on causation. According to plaintiffs, they fulfilled their requirement to notify defendants about the nature of Regan's expected testimony through the January 2007 letter in which they stated that Regan would "testify at trial that to a reasonable degree of medical probability the event of March 2, 2004, led to plaintiff's surgery." Defendants contend that an expert may not offer an opinion on causation at trial if he declines to offer one during his deposition. We agree with plaintiffs' contentions and conclude the trial court erred by striking Regan's causation testimony.[5] We turn first to the legal framework and then to our analysis.

A. *Legal Framework*

"[W]e review the trial court's ruling on the admissibility of expert testimony for an abuse of discretion." (*Mateel Environmental Justice Foundation v. Edmund A. Gray Co.* (2003) 115 Cal.App.4th 8, 25 [9 Cal.Rptr.3d 486].)

Under Code of Civil Procedure section 2034.210, subdivision (a), any party may demand the exchange of expert witness information.[6] In this exchange, a party may provide either "[a] list setting forth the name and address of any person whose expert opinion that party expects to offer in evidence at the trial" or "[a] statement that the party does not presently intend to offer the testimony of any expert witness." (§ 2034.260, subd. (b)(1), (2).) "[Section 2034] and the case law . . . require that 'the general substance of the testimony which the witness is expected to give' must be disclosed upon proper request. As interpreted by the California courts, this requires a party to 'disclose the *substance* of the facts and the opinions to which the expert will testify, either in his witness exchange list, or in his deposition, or both.' [Citation.]" (*Williams v. Volkswagenwerk Aktiengesellschaft* (1986) 180 Cal.App.3d 1244, 1257–1258 [226 Cal.Rptr. 306] , italics omitted (*Williams*).) The issue of whether an expert's testimony at trial may diverge from his deposition testimony has been explored by several courts before.

In *Kennemur, supra*, 133 Cal.App.3d 907, the plaintiff attempted to call an expert to testify about causation at trial. In three depositions prior to trial,

---

[5] Because we agree with plaintiffs' contentions on the merits, we do not reach their threshold argument that defendants waived their right to object to Regan's testimony by waiting until the following day of trial to lodge their motion to strike.

[6] All statutory references are to the Code of Civil Procedure unless otherwise specified.

however, the expert testified that he had no opinion to offer on causation. (*Id.* at pp. 912–913.) The trial court did not permit the expert to testify, and the Court of Appeal affirmed, holding: "When appropriate demand is made for exchange of expert witness lists, the party is required to disclose not only the name, address and qualifications of the witness but the *general substance* of the testimony the witness is expected to give at trial. (§ 2037.3.) In our view, this means the party must disclose either in his witness exchange list or at his expert's deposition, if the expert is asked, the substance of the facts and the opinions which the expert will testify to at trial." (*Id.* at p. 919.) The court reasoned that "[o]nly by such a disclosure will the opposing party have reasonable notice of the specific areas of investigation by the expert, the opinions he has reached and the reasons supporting the opinions, to the end the opposing party can prepare for cross-examination and rebuttal of the expert's testimony." (*Ibid.*) The court was careful to note that the defendant "was entitled to rely on [the expert's] disclaimer [that he would not testify on causation] *until such time* as appellant disclosed that [the expert] had conducted a further investigation and had reached additional opinions in a new area of inquiry." (*Id.* at p. 920, italics added.)

In *Jones v. Moore* (2000) 80 Cal.App.4th 557 [95 Cal.Rptr.2d 216] (*Jones*), the plaintiff sued her former attorney for legal malpractice after her ex-husband stopped paying spousal support. At the plaintiff's expert's deposition, the expert testified that he believed the defendant's conduct fell below the standard of care when he negotiated the underlying divorce settlement and judgment. When asked whether he believed the defendant's conduct fell below the standard of care in other areas of his representation, the expert testified " 'Not that I'm prepared to testify to at this time.' " (*Id.* at p. 563.) When asked whether he anticipated arriving at any other opinions, the expert testified, " 'No, but if I do, you will be notified well in advance, so as to be able to properly exercise your discovery rights.' " (*Id.* at p. 563.) At trial, the expert testified that the defendant's conduct fell below the standard of care when he failed to properly secure the source of the plaintiff's spousal support income, a task unrelated to his negotiation of the underlying settlement and judgment. The trial court excluded this opinion, and the Court of Appeal affirmed, holding: "Under these circumstances, exclusion of testimony going beyond the opinions he expressed during his deposition was justified. . . . When an expert deponent testifies as to specific opinions and affirmatively states those are the only opinions he intends to offer at trial, it would be grossly unfair and prejudicial to permit the expert to offer additional opinions at trial." (*Id.* at pp. 564–565.) The appellate court reasoned that the expert "was in effect not made available for deposition as to the further opinions he offered at trial . . . . He promised to notify defendant if he later formulated such opinions but did not do so." (*Id.* at p. 565.)

In *Bonds v. Roy* (1999) 20 Cal.4th 140 [83 Cal.Rptr.2d 289, 973 P.2d 66] (*Bonds*), a medical malpractice case, the defendant stated in his expert witness declaration that his expert would testify only on the issue of damages. At the expert's deposition, the expert "specifically confirmed he did not expect 'to be giving any testimony or any opinion concerning the standard of care issues that might be involved in this case.' " (*Id.* at p. 143.) At trial, during the afternoon recess of the last day of testimony, defense counsel sought to expand the scope of the expert's testimony to include the applicable standard of care. The trial court denied the request on two grounds: first, the plaintiff had expected the expert to testify only as to damages and "because [the expert] was the last defense witness, there was not enough time to adjourn and take his deposition"; second, expanding the "scope of [the expert's] testimony at that point would be unfair, prejudicial, and a surprise to [the plaintiff]." (*Ibid.*) The Supreme Court affirmed, explaining: "the very purpose of the expert witness discovery statute is to give fair notice of what an expert will say at trial. This allows the parties to assess whether to take the expert's deposition, to fully explore the relevant subject area at any such deposition, and to select an expert who can respond with a competing opinion on that subject area." (*Id.* at pp. 146–147.) The court continued, "[w]hen an expert is permitted to testify at trial on a wholly undisclosed subject area, opposing parties similarly lack a fair opportunity to prepare for cross-examination or rebuttal." (*Id.* at p. 147.)

### B. *Analysis*

■ The overarching principle in *Kennemur, Jones*, and *Bonds* is clear: a party's expert may not offer testimony at trial that exceeds the scope of his deposition testimony *if* the opposing party has no notice or expectation that the expert will offer the new testimony, or *if* notice of the new testimony comes at a time when deposing the expert is unreasonably difficult. The present case differs from *Kennemur, Jones*, and *Bonds* in one salient respect: Defendants learned approximately three months before trial that Regan would go beyond his original deposition testimony and offer a causation opinion at trial. Specifically, plaintiffs informed defendants that Regan would "testify at trial that to a reasonable degree of medical probability the event of March 2, 2004, led to plaintiff's surgery." Thus, unlike the defendants in *Kennemur* and *Jones*, and the plaintiff in *Bonds*, who had no reason to believe that the opposing party's expert would offer an opinion at trial not offered in his deposition, defendants in this case were explicitly notified that Regan would offer an opinion that was different from the opinion he offered in this deposition. And unlike in *Kennemur, Jones*, and *Bonds*, defendants in this case had the opportunity to take Regan's deposition in light of his changed opinion and prepare for cross-examination and rebuttal of his testimony. The elements of unfair surprise and prejudice present in *Kennemur, Jones*, and *Bonds* are entirely absent in this case.

Defendants do not contend that they did not receive plaintiffs' correspondence. Nor do they contend that it was unreasonably difficult or onerous to depose Regan for a second time before trial started. Rather, Spring Dental Group and Laouiti contend in their respondents' brief that "[s]uch notification provided no support for appellants' counsel's assertion that Dr. Regan would testify that surgery was necessitated by the dental chair incident." Similarly, Deledonne contends in his respondent's brief that "there was no such notice to respondents" that Regan would testify on causation at trial. These bare contentions are simply puzzling. As quoted above, the correspondence explicitly notified defendants that Regan would testify at trial that the dental incident caused Easterby to have surgery.

Laying aside the fact that they were explicitly notified of Regan's intention to testify about causation at trial, defendants appear to argue that plaintiffs' failure to make corrections to the transcript of Regan's initial deposition testimony foreclosed any possibility that Regan could offer an opinion on causation at trial regardless of what plaintiffs may have done subsequently to put defendants on notice of Regan's anticipated trial testimony. But neither *Kennemur, Jones, Bonds*, nor any case we could identify stands for this stark proposition.

■ The relevant authorities conclude otherwise. Like any other witness, the fact that an expert's testimony at trial differs from his deposition testimony goes to the expert's credibility; it does not, without some further evidence of prejudice to the opposing party, serve as ground for exclusion. (See Weil et al., Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) ¶ 8:1718 ["[t]he fact that experts disclosed . . . and deposed prior to trial, give contradictory testimony at trial is *not* ground to exclude their testimony. Such 'surprises' go to the weight, not the admissibility . . . . "]; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2007) ¶ 11:21h [advising attorneys: "when your expert has been deposed and disavowed having any additional opinions, and you later discover that he or she can offer additional helpful opinions, *write opposing counsel immediately.* Offer to have the expert redeposed and to *pay for the cost* of the second deposition"]; Code of Civ. Proc., § 2025.620, subd. (a) ["Any party may use a deposition for the purpose of contradicting or impeaching the testimony of the deponent as a witness . . . ."]; accord, *Williams, supra*, 180 Cal.App.3d at p. 1258 [trial court did not abuse its discretion by allowing expert to give an opinion that differed from the one offered at his deposition].)

Furthermore, we conclude defendants' position on appeal is patently at odds with their conduct at trial. Once defendants asked Regan at trial whether he believed the dental incident necessitated Easterby's surgery, Regan was

under penalty of perjury to answer the question truthfully and in accordance with his medical opinion at the time of trial, even if the opinion differed from his deposition testimony. In light of the January 2007 letter, defendants could have no reasonable expectation that he would perjure himself by rigidly sticking to his deposition testimony.

Finally, we are not persuaded by defendants' argument that plaintiffs "never advised [them] that Dr. Regan would testify as a retained expert." According to defendants, "when Dr. Regan changed his testimony, . . . he morphed from acting as a non-retained treating doctor with no opinion, whatsoever, as to causation, to a retained expert witness, with a new opinion as to causation." Regan apparently underwent this metamorphosis according to defendants by "offer[ing] a new causation opinion based upon information he had learned in connection with the trial, not through his physician-patient relationship with Mrs. Easterby."

 As the Supreme Court explained in *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 35–36 [91 Cal.Rptr.2d 293, 989 P.2d 720], a "treating physician is a percipient expert, but that does not mean that his testimony is limited only to personal observations." Like any other expert, a treating physician may provide both fact and opinion testimony, including testimony on the cause of a patient's injuries. (*Id.* at pp. 39–40.) The difference between a treating physician who testifies as an expert and a retained expert "is not the content of the testimony, but the context in which he became familiar with the plaintiff's injuries that were ultimately the subject of litigation, and which form the factual basis for the medical opinion." (*Id.* at pp. 35–36.) Specifically, a retained expert is "one 'retained by a party *for the purpose* of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action' " and a "treating physician is not consulted for litigation purposes, but rather learns of the plaintiff's injuries and medical history because of the underlying physician-patient relationship." (*Id.* at p. 36.)

Our reading of the record does not comport with defendants' contention that Regan relied only on information acquired at trial to form his causation opinion. On direct examination, Regan testified that even though Easterby had a "degenerative condition of the cervical spine," he believed the dental incident resulted in an injury "that would not get better without surgery." Thus, Regan opined, even though Easterby received "conservative treatment" for the pain she felt after the dental incident, "[t]he treatment did not help her, and this is what eventually led to her needing surgery." This opinion was based entirely on information he acquired while he was treating Easterby as a patient. We recognize that on cross-examination, when presented with additional medical records by defense counsel, Regan backed away from his

initial opinion and testified he could not state with a reasonable degree of medical probability that the dental incident necessitated Easterby's surgery. We also recognize that Regan reverted to his initial opinion after the lunch break. As we have said, these apparent conflicts and backpedaling in Regan's testimony certainly go to the weight of his opinion. They do not, however, "morph" Regan from a treating physician to a retained expert and serve as a basis for striking his testimony.[7]

■ For the foregoing reasons, we conclude the trial court erred by striking Regan's testimony. An evidentiary ruling, even if erroneous, is not reversible absent a miscarriage of justice. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson, supra,* 46 Cal.2d at p. 836.) The error here was undoubtedly prejudicial. Regan was plaintiffs' only witness on causation. Both parties and the trial court agreed that, without Regan's testimony, plaintiffs could not prove causation, a requisite element for all of their claims. Had the trial court permitted Regan's testimony to stand and defendants moved for nonsuit after plaintiffs' case, it is reasonably probable the trial court would have denied the motion, a result more favorable than what plaintiffs obtained below.

As defense counsel readily acknowledged, the traditional response to a witness whose testimony is considered flawed would be cross-examination, impeachment, argument, and perhaps rebuttal. Defense counsel showed themselves to be well skilled in those arts. Had the case proceeded further, defendants would undoubtedly have argued that Easterby's ailments, if any, were the consequence of a variety of prior events, even including an ill-fated encounter with a mule. Defendants will not be unarmed if this case ultimately reaches another trial, but plaintiffs are entitled to that trial.

II. *Section 998*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[7] We also reject defendants' similar contention that Regan's testimony lacked foundation because it relied on information he acquired outside the physician-patient relationship. Defendants did not raise this as a ground to exclude Regan's testimony below and they cannot raise it for the first time on appeal. (*People v. Demetrulias* (2006) 39 Cal.4th 1, 20–21 [45 Cal.Rptr.3d 407, 137 P.3d 229].)

\*See footnote, *ante*, page 772.

## DISPOSITION

The judgment is reversed. Appeal by defendants Spring Dental Group and Laouiti is dismissed as moot. Plaintiffs shall recover their ordinary costs on appeal.

Mallano, P. J., and Rothschild, J., concurred.