Filed 7/23/14  Seamans v. Xiong CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LAURINDA SEAMANS, | F067034 |
| Plaintiff and Appellant, | (Super. Ct. No. MCV057322) |
| v. | **OPINION** |
| XANG XIONG et al., | |
| Defendants and Respondents. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

McClaugherty & Associates and Jay S. McClaugherty for Plaintiff and Appellant.

Cholakian & Associates, Kevin K. Cholakian and Jeremy M. Jessup for Defendants and Respondents.

-ooOoo-

Plaintiff appeals from the judgment against her in a personal injury action arising out of a motor vehicle accident.  She challenges admission of certain testimony by

---

[*]    Before Hill, P. J., Levy, J. and Detjen, J.

defendants' expert witness, asserting it was beyond his expertise and beyond the scope of the opinions he indicated in his deposition that he would offer at trial. We conclude the trial court did not abuse its broad discretion by admitting the testimony; the expert did not exceed the scope of his deposition testimony and plaintiff failed to demonstrate that the challenged testimony was outside his area of expertise. Further, it is not reasonably probable a more favorable result would have ensued in the absence of the challenged testimony; any error was not prejudicial. Accordingly, we affirm the judgment.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff was traveling on Avenue 26, a straight, bumpy farm road, behind a chicken truck belonging to defendant, Palmer Farms, and driven by defendant, Xang Xiong. She decided to pass the truck. According to Greg Conner, a witness who was driving a car approaching from the opposite direction, plaintiff pulled into the oncoming traffic lane and, about the time her pickup was side by side with the chicken truck, the truck began a left turn into the driveway of Palmer Farms. The two collided and plaintiff's pickup left the roadway and rolled over two to four times. When Conner arrived at the scene, plaintiff had climbed out the driver's door, which was facing upward, and he helped her down.

At trial, there was differing testimony regarding the speed of defendants' truck, how long plaintiff was in the oncoming traffic lane before the collision, and whether Xiong was preparing to turn left before or at the same time plaintiff began her passing maneuver. Plaintiff and Xiong both testified they signaled before moving or turning to the left. Conner testified he did not see a turn signal on either vehicle.

Plaintiff's trucking expert testified plaintiff's pickup would have been in Xiong's line of sight in his side mirror if he had looked in the mirror while she was passing in the oncoming traffic lane. Plaintiff's accident reconstruction expert testified plaintiff began her lane change well before the chicken truck began its left turn, and her pickup would

2

have been visible in Xiong's side mirror as soon as it entered the passing lane. Defendants' accident reconstruction expert testified that his engineering calculations resulted in a range of possibilities and, because of the slow speed of defendants' truck, it could not be determined whether defendants' truck began its turn before or after plaintiff's pickup moved into the oncoming traffic lane.

The final witness was defendants' trucking expert, Lewis Grill. He opined that Xiong acted properly in checking his side mirror a few seconds before he began his left turn and not checking it again as he began turning because at that point his attention was properly on what was ahead of him. After drawing Grill's attention to Conner's testimony that he did not see either vehicle display a turn signal, defense counsel asked Grill how far away a driver would be able to observe whether an oncoming vehicle had a turn signal on or not. Plaintiff's counsel objected that the question called for a human factors opinion, called for an opinion that was not given by Grill at his deposition, and was beyond the scope of direct examination. The court overruled the objections. Grill testified:

> "In two and a half million miles of driving trucks and in visiting that scene, let's call it the accident scene, when you look to eastbound where Mr. Conner was because he was driving westbound and Mr. Conner says about a quarter of a mile away, the next turn after Palmer Farms is a street that's up there that I estimate to be probably about a quarter of a mile away. A tractor trailer had come out of that street going I guess that would be southbound to make a right-hand turn and go west onto 26 which would be approximately the same distance and same direction as Mr. Conner and he either didn't use his turn signal or didn't have it on. But you wouldn't be able to see it from that distance. Federal Motor Vehicle Safety standards only set it up so that it needs to be seen from 500 feet away. Quarter of a mile is 1380 feet. And so, you know, I'm not trying to downplay Mr. Conner, but unless he has binoculars, I don't see how he'd know that."

There were no further questions from either attorney.

3

Before closing arguments, plaintiff made a motion for mistrial based on Grill's opinion about the turn signals. The trial court denied it. The jury returned a verdict in favor of defendants. Plaintiff subsequently moved for a new trial, asserting plaintiff was surprised by Grill's unexpected testimony regarding visibility of the turn signals. The trial court denied that motion. Plaintiff appeals, contending it was error to permit Grill to testify to an opinion that was not within his area of expertise and was not expressed in his deposition. Plaintiff challenges the judgment and the denial of her motion for a new trial.

## *DISCUSSION*

### I.     Standard of Review

"A trial court's ruling on the admissibility of evidence is generally reviewed for abuse of discretion." (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476.) "'"The burden is on the party complaining to establish an abuse of discretion ...."'" [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.) "'An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] The abuse of discretion standard affords considerable deference to the trial court, provided that the court acted in accordance with the governing rules of law.'" (*Kayne v. The Grande Holdings Limited* (2011) 198 Cal.App.4th 1470, 1474-1475.)

"A motion for a new trial is directed to the sound discretion of the trial judge, who must pass upon the credibility of the witnesses and the weight and probative force of their testimony." (*Myles v. Los Angeles Ry. Corp.* (1943) 62 Cal.App.2d 14, 17.) The trial court's decision "will not be disturbed in the absence of a clear and affirmative showing of gross, manifest, or unmistakable abuse of discretion. [Citation.]" (*Flores v. McCoy* (1960) 186 Cal.App.2d 502, 506.)

4

## II.     Admissibility of Evidence about Visibility of Turn Signals

A party to litigation may make a demand for an exchange of information about expert witnesses the parties intend to call at trial.  (Code Civ. Proc., § 2034.220.)**1**  If the demand is made, all parties must exchange lists of the expert witnesses they plan to call at trial, or state that they do not intend to offer any expert testimony.  (§ 2034.260, subds. (a), (b).)  For any expert witnesses retained by a party to give expert testimony, the exchange must include a declaration setting out the qualifications of the expert and "the general substance of the testimony that the expert is expected to give."  (§ 2034.260, subd. (c)(1), (2).)  "As interpreted by the California courts, this requires a party to 'disclose the substance of the facts and the opinions to which the expert will testify, either in his witness exchange list, or in his deposition, or both.' [Citations.]"  (*Williams v. Volkswagenwerk Aktiengesellschaft* (1986) 180 Cal.App.3d 1244, 1257-1258, italics omitted.)  It does not require disclosure of specific facts and opinions.  (*Id*. at p. 1258.)

Defendants' expert witness designation included Grill as a retained expert.  The accompanying declaration stated Grill would testify to "issues relating to the safe operational practices of commercial truck drivers and associated standards of care; the practical operation of commercial trucks on highways, operation of commercial trucks for turning maneuvers, issues of evasive maneuvers and accident avoidance in commercial trucks"; it also stated Grill would give rebuttal testimony, related to his field of expertise. In his deposition, Grill listed ten opinions he had reached.  Opinion 4 was that plaintiff was not paying attention or driving defensively and, as she approached defendants' vehicle, she did not notice it was preparing to make a turn; opinion 6 was that Xiong signaled his left turn by activating his turn signal and slowing sufficiently to make the turn.  In his deposition, Grill stated his opinion that Xiong signaled his turn by activating

---

**1**      All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

5

the turn signal and slowing down was based on the following facts: Xiong was turning into Palmer Farms on the left, and he testified he activated his turn signal. The truck could not have made the turn at a high rate of speed, so it had to slow down; Xiong also said he slowed down from 40 or 45 miles per hour, to 25, then to 4 miles per hour. Additionally, Conner indicated the truck slowed down considerably. Grill stated his opinion was based on the testimony of Xiong and Conner, physics, logic, and the testimony of defendants' accident reconstruction expert. After Grill discussed his ten opinions in his deposition, he was asked whether that was all the opinions about which he intended to testify at trial, and Grill answered affirmatively. He then added:

> "[Y]ou have all of my opinions that are based on the information and material that I read today and that I render in this case at this point in time. However, I reserve the right to supplement my opinions predicated on new information that becomes available to me and other investigation that I may do into this case if asked, and I don't know what you're going to ask me at trial."

During cross-examination at trial, plaintiff's attorney asked Grill if he was aware that a witness testified Xiong did not put his turn signal on. Grill responded: "I'm aware that Mr. Conner said he didn't see a turn signal. He doesn't know if he put it on or not. He doesn't know what Mr. Xiong would know." On redirect, defense counsel asked Grill to recall Conner's testimony that he did not see a signal on defendants' truck; he asked Grill, as a truck driver, how far in distance a truck driver would be able to observe whether oncoming vehicles had their signals on or not. Grill then gave the challenged response suggesting Conner, a quarter of a mile away, was too far away to see whether the parties' turn signals were turned on.

At the hearing of plaintiff's motion for a new trial, after reviewing the transcript of Grill's deposition and its discussion of Grill's sixth opinion, the trial court stated:

> "Now, when Conner testified at trial that he didn't see the signal and …
> that point was … made to Grill during cross-examination, well, Mr. Grill

6

would naturally address that. And it seems to me that it would be natural for Mr. Grill to support his opinion. So given the fact that his sixth opinion relates directly to whether Xiong turned his signal on before he started his turn or not, it's hard for me to conclude that there is surprise that the witness who indicated that that was one of his opinions would testify at trial regarding that opinion."

The trial court concluded Grill's deposition made clear the issues he would address, and his trial testimony was consistent with what was in his deposition. Accordingly, it found no error in allowing the testimony to be admitted.

"When an expert deponent testifies as to specific opinions and affirmatively states those are the only opinions he intends to offer at trial, it would be grossly unfair and prejudicial to permit the expert to offer additional opinions at trial." (*Jones v. Moore* (2000) 80 Cal.App.4th 557, 564-565 (*Jones*).) Where, however, the opinion expressed at trial is within the general ambit of the facts and opinions the expert has disclosed in his deposition, and does not involve a new area of inquiry not previously disclosed, the trial court does not abuse its discretion by permitting the expert to express that opinion. (*DePalma v. Rodriguez* (2007) 151 Cal.App.4th 159, 165.)

In his deposition, Grill testified to his opinion that Xiong signaled his left turn by activating his turn signal and slowing down. He based his opinion on the testimony of Xiong and Conner, physics, logic, and the testimony of defendants' accident reconstruction expert. He specifically based his opinion that Xiong activated his turn signal on Xiong's testimony. At his deposition, Grill was not asked to comment on plaintiff's or Conner's testimony that they did not see Xiong's turn signal. When asked at trial about Conner's testimony, Grill expanded on his already expressed opinion that Xiong activated his signal by relating his experience at the accident site, where he was unable to see whether the turn signal on a truck approximately a quarter of a mile away was activated, and by stating the federal standard for visibility of turn signals is 500 feet. The challenged testimony did not address a new area of inquiry, outside the opinions

7

expressed in Grill's deposition. Consequently, we conclude the trial court did not abuse its discretion by overruling plaintiff's objection to Grill's testimony.

Plaintiff also seems to contend her motion for new trial should have been granted on the ground of surprise because Grill testified to a new opinion not disclosed in his deposition. A new trial may be granted on the ground of "[a]ccident or surprise, which ordinary prudence could not have guarded against." (§ 657, subd. (3).) "'The "surprise" mentioned by the statute must be the result of some fact or circumstance or situation occurring at the trial which could not in the nature of the case reasonably have been anticipated would arise and which is of such importance or magnitude in its influence upon the result arrived at from the trial as to have produced as against him or his rights injury or damage. The mere giving of testimony contrary to the interests of a party, or even the fact that false testimony has thus been given, although wholly unexpected by the party against whom it is given, will not itself always operate as a predicate for the awarding of a new trial of the issue.'" (*Wilson v. Kopp* (1952) 114 Cal.App.2d 198, 206-207 (*Wilson*).)

The question on appeal from the denial of a new trial motion is "whether, on the affidavits submitted, the trial court was compelled to grant the new trial, not whether the affidavits would have supported an order granting the new trial." (*Wilson, supra,* 114 Cal.App.2d at p. 205.) "[T]he precise question presented is whether the trial court, as a matter of law, abused [its] discretion in denying the motion." (*Ibid*.) "While a trial court may grant a motion for a new trial on [the ground of surprise] where it appears that a party is misled by a witness as to the evidence expected from him, or is unexpectedly presented with claimed perjured testimony, the court is not compelled to grant the motion where the evidence relates to an issue that is obviously within the issues to be tried." (*Id*. at p. 206.)

8

The trial court was not, as a matter of law, required to grant plaintiff's motion for new trial. It exercised its discretion and determined the matter about which Grill testified was not only within the issues to be tried, but was within the scope of the issues to which he testified in his deposition. We find no error in that determination.

The cases relied on by plaintiff are distinguishable. In *Kennemur v. State of California* (1982) 133 Cal.App.3d 907 (*Kennemur*), a defense accident reconstruction expert testified the automobile accident in issue was caused when plaintiff steered her Volkswagen Super Beetle (VW) to the left across the center line into the path of another vehicle. (*Id.* at p. 912.) He based his opinion on tire tracks on the roadway in photographs of the scene. Plaintiff proposed to rebut this testimony with her accident reconstruction expert, Ted Mitchell. (*Ibid.*) In three depositions of Mitchell taken before trial, however, he consistently denied having any opinions about roadway issues, indicated his work was limited to issues related to the VW, and stated another expert designated by plaintiff would address roadway issues. (*Id.* at pp. 912-914.) The trial court excluded Mitchell's testimony and the appellate court found no error. "The decisive fact in the present case is [plaintiff's] failure to disclose Mitchell's expected testimony concerning the tire tracks either at Mitchell's deposition or as required by section 2037.3."[2] (*Kennemur,* at p. 918, fn. omitted.) "The fact that early in the lawsuit Mitchell had been given copies of the California Highway Patrol accident report and the photographs showing the tire tracks and that Mitchell had calculated energy absorption and impact damage concerning the VW, does not mean he had analyzed the tracks or the condition of the highway as a cause of the accident. To the contrary, he specifically

---

[2]     Similar to current section 2034.260, subdivision (c)(1) and (2), former section 2037.3 then provided: "'Each witness list shall include the name and business or residence address of each expert witness whom the party expects to call in person or through deposition and a brief narrative statement of the qualifications of such witnesses and the general substance of the testimony which the witness is expected to give.'" (*Kennemur, supra*, 133 Cal.App.3d at p. 917, italics omitted.)

testified at his deposition that he had not investigated that phase of the accident. Respondent was entitled to rely on Mitchell's disclaimer until such time as appellant disclosed that Mitchell had conducted a further investigation and had reached additional opinions in a new area of inquiry." (*Id*. at pp. 919-920.)

*City of Fresno v. Harrison* (1984) 154 Cal.App.3d 296 (*City of Fresno*), was an eminent domain case in which the only issue was the value of defendants' business goodwill. (*Id*. at pp. 298-299.) Defendants complied with the requirements for designating experts under the eminent domain statutes, but plaintiff did not retain its expert until one month before trial. At his deposition, plaintiff's expert had not reviewed the data or formed any opinion. (*Id*. at p. 299.) At trial, defendants presented their case and then objected to plaintiff's expert testifying. The court suggested granting a continuance, but defendants believed the time lapse after presentation of their case would prejudice them. (*Id*. at pp. 299-300.) The trial court allowed the expert to testify and the jury found defendants suffered no loss of goodwill. After trial, defendants discovered plaintiff's expert had relied on information the court had precluded in a prior ruling. The trial court granted defendant's new trial motion on the grounds of irregularity in the proceedings and surprise, and plaintiff appealed. (*Id*. at p. 300.)

The court affirmed the order for a new trial, concluding: "In this case City failed to reveal that the expert was using information the court had precluded. To offer the objecting party a continuance immediately prior to trial disregards the right of the party to the trial date; to offer a break in the middle of the trial after the owner rests is even more unfair. It affords the condemner an undeserved opportunity to stop and formulate a response to the owner's case while the juror's memories of the previous testimony dim. It was not an abuse of discretion for the trial court to grant a new trial based upon the surprise." (*City of Fresno, supra*, 154 Cal.App.3d at pp. 301-302.)

10

In *Easterby v. Clark* (2009) 171 Cal.App.4th 772 (*Easterby*), Dr. John Regan, a treating physician in a personal injury action, was deposed and stated he was not asked to form an opinion regarding causation. Plaintiff's attorney later sent a letter to defendants, advising that Regan would testify at trial that the incident in which plaintiff was injured caused the need for surgery. (*Id*. at pp. 775-776.) Defendants did not depose Regan about that opinion. Prior to trial, defendants moved to exclude expert testimony about opinions not expressed in the experts' depositions. Plaintiff did not oppose and the motion was granted. (*Id*. at p. 776.) At trial, Regan's testimony included his opinion that the incident in issue caused the need for surgery. (*Ibid*.) Defendants moved to strike all of Regan's testimony on the ground his causation opinion was not disclosed in his deposition and the court had excluded such opinions. (*Id*. at p. 777.) The trial court granted the motion, then granted defendants' motion for nonsuit because there was no other evidence of causation. (*Ibid*.)

The appellate court concluded the trial court abused its discretion by striking Regan's testimony. (*Easterby, supra*, 171 Cal.App.4th at p. 778.) It acknowledged that an expert must disclose the substance of the facts and opinion to which the expert will testify, either in the witness exchange list or in deposition, or both. (*Ibid*.) The court distinguished *Kennemur* and other cases: "The overarching principle in *Kennemur*, *Jones*, and *Bonds* [*v. Roy* (1999) 20 Cal.4th 140] is clear: a party's expert may not offer testimony at trial that *exceeds the scope of his deposition testimony* if the opposing party has no notice or expectation that the expert will offer the new testimony, or if notice of the new testimony comes at a time when deposing the expert is unreasonably difficult." (*Easterby*, at p. 780, italics omitted & added.) In *Easterby*, in contrast, the defendants had notice of the new opinion and an opportunity to depose the expert again before trial to explore it, but they failed to take advantage of that opportunity. (*Ibid*.)

11

In *Kennemur*, the expert testimony proffered at trial was about an issue the expert stated in multiple depositions that he had no opinion about and another expert witness would address. Grill's testimony regarding Xiong's use of his turn signal and Conner's statement that he did not see a turn signal was within the scope of the opinions Grill expressed at his deposition; in his deposition, he did not deny having an opinion on these issues or refer the issues to another expert witness. The trial court in *City of Fresno*, granted a new trial because the plaintiff's expert was unprepared and expressed no opinions during his deposition, and the trial court learned after the trial that the expert based his opinion on improper matter. There was no such occurrence in this case. In *Easterby*, the expert testimony offered at trial was not within the scope of the expert's deposition testimony, but it was within the scope of the issues the plaintiff subsequently notified the defendants the expert would testify to. Grill's trial testimony was within the scope of the facts and opinions he discussed in his deposition.

Plaintiff also asserts the evidence should have been excluded or a new trial should have been granted because Grill testified to an opinion that was beyond his area of expertise. Plaintiff contends an opinion regarding visibility of a turn signal was within the expertise of a human factors expert, not a trucking expert, and Grill was not qualified to testify as a human factors expert. Although plaintiff asserts Grill was not qualified to testify regarding whether a driver could see a turn signal or not because he was not a human factors expert, and baldly states "[w]hat a driver can and cannot see is a human factors opinion," she cites nothing in the record and no legal authority in support of these assertions.[3] Accordingly, she has not carried her burden of demonstrating error on this basis.

---

[3] The appellant bears the burden of establishing error in the judgment. To do so, "[t]he appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557.)

### III.     Prejudice

Even if we were to find error in the admission of Grill's challenged testimony, that error would not justify reversal of the judgment. "An evidentiary ruling, even if erroneous, is not reversible absent a miscarriage of justice. [Citations.] '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*Easterby, supra*, 171 Cal.App.4th at p. 783.) "[A] 'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*. [Citations.]" (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.)

After an examination of the evidence, we reject plaintiff's contention that admission of Grill's testimony was prejudicial because Conner was the only eyewitness to the accident, his testimony was favorable to plaintiff, and Grill's testimony that Conner could not have seen whether Xiong's turn signal was on from a quarter of a mile away "destroyed" Conner's credibility. The trial court concluded admission of Grill's testimony did not prejudice plaintiff. It heard all of the evidence and observed the demeanor of the witnesses as they testified. The trial court was in a better position than this court to judge the effect of the evidence on the jury. At the hearing of the motion for new trial, the trial court reviewed the evidence admitted at trial and noted it did not give much consideration to Conner's testimony; if it had been the trier of fact, it would not have relied heavily on Conner's testimony. The trial court observed that, in light of all the other evidence presented, Grill's testimony was "a very small issue." In light of the testimony of the Highway Patrol officer and the two accident reconstruction experts, the trial court could not reasonably conclude the verdict would have been different if Grill had not been allowed to testify.

13

The evidence supports the trial court's conclusions. As the trial court pointed out, Conner was not the only eye witness to the collision. Both plaintiff and Xiong testified about how the incident occurred. Xiong testified he was traveling at 45 miles per hour when he first saw plaintiff behind him. He applied his brakes and slowed to 25 miles per hour, then he slowed to 4 to 5 miles per hour before starting to turn. Xiong put on his turn signal; he checked his side mirror 2 to 10 seconds before turning the wheel. When Xiong turned his truck, plaintiff's pickup crashed into it.

Plaintiff testified she followed Xiong's truck for some time, matching his speed of 45 miles per hour. The truck was traveling 35 to 40 miles per hour when she decided to pass it; she passed it at a speed of about 47 miles per hour. The truck's left-turn signal and brake lights did not come on before she passed or while she was passing. Plaintiff denied that Xiong slowed down to 4 or 5 miles per hour; she stated she had to accelerate to pass the truck and if he had been going 5 miles per hour, she could have passed him in a second. She testified she was in the passing lane 15 seconds.

Plaintiff's accident reconstruction expert based his opinion on Conner's deposition testimony and his own assumptions and calculations. He took into consideration Conner's testimony plaintiff's pickup was in the westbound lane one to several seconds before the truck started its left turn. He calculated plaintiff's pickup was traveling 45 to 55 miles per hour at impact, accepted Xiong's testimony he was traveling 4 to 5 miles per hour before he began his turn, and opined plaintiff's pickup would have been visible in Xiong's mirror for 3 to 5 seconds before the point of impact.

Defendants' accident reconstruction expert concluded Xiong's speed at the time of impact was about 5 miles per hour and plaintiff's was 40 to 50 miles per hour. He relied on Conner's testimony in many of his opinions. He concluded the pickup and the truck initiated their movements (left turn and passing maneuver) within a second or two of each other, and there was no way to say which occurred first. If plaintiff began her passing

14

movement first, it was no more than a second before Xiong began his turn and he couldn't say with any degree of engineering certainty whether plaintiff's pickup would have been visible in Xiong's mirror for even that second.

Plaintiff contends Grill's testimony that Conner could not have seen whether Xiong's turn signal was activated from a quarter of a mile away destroyed Conner's credibility, regarding both the turn signal not being on and the two vehicles being side by side before the collision. Grill's testimony, however, did not contradict Conner's testimony that he did not see a signal on the truck before it attempted to turn. Grill proposed an alternative explanation why Conner did not see a signal on the truck that was consistent with Xiong's testimony that he activated his signal before he turned. Grill's testimony did not, as plaintiff asserts, suggest that Conner was a liar or destroy his credibility. It did not in any way disparage Conner's testimony that the vehicles were side by side before the collision, especially in light of the fact both accident reconstruction experts relied heavily on that testimony in reaching their conclusions. The evidence supports the trial court's conclusion it was not reasonably probable a result more favorable to plaintiff would have been reached if Grill's testimony had been excluded. Neither admission of the testimony nor denial of plaintiff's new trial motion was an abuse of discretion.

## *DISPOSITION*

The judgment is affirmed. Defendants are entitled to their costs on appeal.

15