Filed 3/9/15  Horn v. Rand CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| STEVEN J. HORN, | B252044 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC474177) |
| v. | |
| MICHAEL J. RAND, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Johnson, Judge.  Affirmed.

Law Offices of Howard A. Kapp and Howard A. Kapp for Plaintiff and Appellant.

Reback, McAndrews, Kjar, Warford, Stockalper & Moore, James J. Kjar, Cindy A. Shapiro; Lewis Brisbois Bisgaard & Smith, Raul L. Martinez, for Defendant and Respondent.

_____

It is not unusual for one legal action to generate additional litigation. This case illustrates the point in the extreme. Plaintiff and appellant Steven J. Horn, an attorney, represented former clients in an action. Horn's representation of his former clients spawned seven additional legal proceedings in the form of civil actions, appeals, and arbitration. None ended well for Horn. His losing streak continues, as we affirm the judgment after a jury verdict in favor of defendant and respondent Michael J. Rand in Horn's latest attorney malpractice action.

### Summary of the Actions, Appeals, and Arbitration

1. Horn filed an action for unpaid attorney fees against his former clients, Henry and Janelle Hoffman. The Hoffmans responded with a cross-complaint against Horn alleging various acts of malfeasance. Horn was represented by Frank Nemecek of Nemecek & Cole (Nemecek) in the action against the Hoffmans. The jury returned identical damages awards in favor of Horn on his complaint and the Hoffmans on their cross-complaint, resulting in a net award of "zero." The Hoffmans filed an appeal.

2. On the appeal by the Hoffmans, Division Eight of this appellate district held that the Hoffmans were entitled to attorney fees since they were the prevailing defendants on Horn's complaint. (*Horn v. Hoffman* (July 22, 2008, B187647) [nonpub. opn.].) On remand, the trial court ordered Horn to pay approximately $380,000 in attorney fees to the Hoffmans.

3. Horn filed a notice of appeal from the award of attorney fees in favor of the Hoffmans. While that order was on appeal, Horn settled with the Hoffmans for $250,000.

4. Dissatisfied with Nemecek's representation in the action against the Hoffmans, Horn filed a legal malpractice action against Nemecek. Horn made a demand for arbitration of his legal malpractice claim against Nemecek with the Judicial Arbitration and Mediation Service (JAMS) pursuant to an arbitration clause in his retainer agreement

2

with Nemecek. Nemecek filed a counterclaim against Horn for unpaid attorney fees and costs. The parties chose retired United States District Court Judge George Schiavelli as the arbitrator. Rand did not represent Horn at the phase of the arbitration involving the legal malpractice issue. Judge Schiavelli ordered the parties to take nothing on their respective claims, but allowed either party to claim attorney fees. Nemecek requested an award based on reasonable attorney fee rates under the lodestar rule. Rand represented Horn in the defense of Nemecek's motion for attorney fees. Judge Schiavelli ultimately awarded Nemecek attorney fees of $237,177.36.

5. Horn appealed the judgment and the award of attorney fees. Division Eight rejected Horn's arguments and affirmed the award of attorney fees. (*Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641.) On remand, attorney fees were awarded to Nemecek, which Horn settled by paying $404,417.20.

6. Unhappy that Nemecek had obtained an award of attorney fees, Horn turned his litigation sights on Rand, filing an action alleging legal malpractice. The jury found that Rand was not negligent in representing Horn on Nemecek's motion for attorney fees. Because the jury found no negligence by Rand, it did not reach the issue of causation.

7. Horn now appeals from the judgment entered in favor of Rand.


**The Instant Malpractice Action**


On November 29, 2011, Horn filed a legal malpractice action against Rand. Horn alleged Rand negligently handled Nemecek's motion for attorney fees.

Horn's theory at trial was that Judge Schiavelli failed to issue an attorney fee award within the 30 day period following the close of the arbitration as required by the JAMS rules. Horn's position was that the arbitration closed on September 2, 2010, and 30 days thereafter Judge Schiavelli lost jurisdiction to award attorney fees. Horn reasoned that Rand was negligent when he advised Horn not to object to the delay in rendering an award of attorney fees. According to Horn, if an objection had been made

3

on the ground that Judge Schiavelli did not have jurisdiction to award attorney fees because more than 30 days had passed since the arbitration was closed, there would have never been an attorney fee award against him because no other arbitrator or court could have ruled on the motion.

Rand defended the action by arguing that Judge Schiavelli did not close the hearing on September 2, 2010, Rand complied with the standard of care in his representation of Horn, and in any event, Horn would not have been absolved of his obligation to pay Nemecek's attorney fees since Nemecek would have pursued its fee claim in another arbitration or in an action in superior court.

The jury rendered a verdict in Rand's favor, finding he was not negligent and therefore did not breach the standard of care. Because the jury found that Rand was not negligent, it did not reach the issue of causation or damages. Judgment was entered for Rand and Horn filed a timely notice of appeal.

Horn contends on appeal that the trial court erred by refusing to instruct the jury on the law and instead allowing expert witnesses' testimony to serve as the law. Horn further contends the court erred in admitting the arbitrator's emails and denying admission of JAMS's business records. We affirm, holding as follows: the court did not abuse its discretion in admitting Rand's expert witnesses' testimony on the issue of standard of care; it was not error to permit one of Rand's expert witnesses to testify on the issue of causation, but in any event the purported error was harmless as a matter of law because the jury found Rand was not negligent; the court properly instructed the jury on the law; and the court did not err in admitting the Judge Schiavelli's emails and denying the admission of JAMS's business records.

**The Arbitration Proceedings Before Judge Schiavelli**

Horn was represented by attorney Sindee Smolowitz in the legal malpractice phase of the arbitration against Nemecek. Nemecek was represented by James Murphy of

4

Murphy Pearson Bradley & Feeney (Murphy). The evidentiary hearing lasted five days, with each party submitting testimony and briefing. Thereafter, Judge Schiavelli asked for additional briefing and requested an additional oral argument. In an extensive opinion, Judge Schiavelli ordered the parties to take nothing on their respective claims, but left open the option of either party to move for attorney fees. Judge Schiavelli noted that issues of credibility were very important and "found Horn's credibility lacking."

Nemecek filed a motion for attorney fees and costs as the prevailing party at arbitration. Nemecek was entitled to attorney fees as the prevailing party under the terms of the retainer agreement with Horn, a point acknowledged by Horn. Horn filed an opposition, asserting, among other things, that Nemecek's award should be limited to rates actually paid to Murphy by Nemecek's insurance carrier. Additionally, Rand specifically requested that the arbitrator order Nemecek to produce Murphy's actual billing statements for review and verification. Nemecek filed a reply.

On September 2, 2010, Judge Schiavelli held a two-hour hearing on the motion for attorney fees. Rand, Horn, Nemecek, and Murphy were present at the hearing. "Rand argue[d] that the amount of [Nemecek's] actual bills was what should be awarded as opposed to . . . a lodestar calculation." Judge Schiavelli did not announce whether he would award attorney fees on a lodestar approach or an actual billing approach. Both Nemecek and Murphy believed that this was an important issue on which Judge Schiavelli would request additional briefings. Based on his experience, Murphy testified that the arbitrator would announce when a hearing or matter was closed, something Judge Schiavelli had not done with respect to the motion for attorney fees.

On October 11, 2010, Rand sent a series of emails to Horn in which Rand discussed the delay in issuing a ruling on the motion for attorney fees. Rand's email "contained an in-depth analysis and research regarding the action Horn should take due to the arbitrator's" delay in issuing attorney fees. Rand billed Horn 1.2 hours for "legal [re]search regarding arbitrator's duty/time to act; alternative approach, etc. Email to client regarding status and strategy. Email from and to client regarding decision."

5

On November 10, 2010, Judge Schiavelli sent an email to counsel for both parties stating, "I have received word that there is a good deal of unhappiness about the issuance (or non-issuance) of the attorney's fees award." Judge Schiavelli referred to an "invitation" sent by him at the end of September in reference to *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603 (*Center for Biological Diversity*). He "was very surprised when neither side accepted [his] invitation (and I recognize it was not an order)" to comment on the case which had been decided on September 17, 2010. At the September 2, 2010 hearing, Judge Schiavelli "raised a number of questions regarding the implementation of the lodestar calculation" in connection with attorney fees. "These questions were not really addressed with specificity during the argument." Judge Schiavelli received no response and assumed the parties felt there was no relevance of the case. He apologized for taking a long time in ruling on the issue of attorney fees, but noted the complexity of the case warranted the delay.

Rand responded to Judge Schiavelli's email later that day stating that he had not received any emails after the date of the hearing on September 2, 2010, including the email regarding the *Center for Biological Diversity* case. Murphy responded to Judge Schiavelli's email, advising that his client declined to submit briefing on the case, except that he requested an opportunity to respond to any written submission by Rand on behalf of Horn.

On November 11, 2010, Judge Schiavelli sent an email to Rand and Murphy stating, " I have received word that Mr. Murphy in fact chose not to deal with the [*Center for Biological Diversity*] case as was his right. I am concerned that Mr. Rand did not receive the email. Accordingly, I will give him his requested opportunity to deal with this case. He may have 10 pages and may respond by Wednesday, Nov. 18 . . . I plan to issue the ruling within 24 hours of receiving Mr. Rand's submission."

On November 12, 2010, Rand, on behalf of Horn, responded to Judge Schiavelli's email, advising that his client declined to submit further briefing. That same day, Judge

6

Schiavelli sent an email to Rand and Murphy stating that "[s]ince no further submissions are contemplated, I will remain with my conclusion on the issue."

In an November 14, 2010 email, Judge Schiavelli stated to counsel for both parties, "In acknowledging briefing was therefore closed, I noted, solely for the parties information, areas in which I saw some relevance of *Center for Biological Diversity* to the case here."

On November 16, 2010, Judge Schiavelli issued an award of $289,028.50 in attorney fees to Nemecek. Nemecek is "plainly the prevailing part[y] and Mr. Horn is to recover nothing as an offset." Neither side is to recover any additional costs. Judge Schiavelli further noted that an "issue I brought up at the [September 2, 2010] hearing on [reasonable attorney fees,] to which I have not received a definite answer from either party." On November 23, 2010, Judge Schiavelli issued an amended award of $237,177.36 in attorney fees to Nemecek.

Nemecek filed a petition to confirm the arbitration award. Rand, on behalf of Horn, filed a motion to vacate the arbitration award. The trial court rejected Horn's motion and granted Nemecek's petition confirming the arbitration award. Horn appealed the judgment and the award of attorney fees asking for re-arbitration. As noted above, Nemecek prevailed on appeal and Horn ultimately settled by paying $404,417.20 to Nemecek for attorney fees.

## DISCUSSION

**General Principles**

Horn's cause of action for legal malpractice consists of the following elements: "'(1) the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate casual connection between the breach and the resulting injury; and (4) actual loss or damage.'"

7

(*Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 536.) "'The attorney is not liable for every mistake he may make in his practice; he is not, in the absence of an express agreement, an insurer of the soundness of his opinions or the validity of an instrument that he is engaged to draft; and he is not liable for being in error as to a question of law on which reasonable doubt may be entertained by well-informed lawyers.'" (*Kirsch v. Duryea* (1978) 21 Cal.3d 303, 308.)  To establish a breach, the plaintiff must show that the attorney's advice was "'so legally deficient when it was given that he [or she] may be found to have failed to use "such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." [Citation.]' [Citations.]" (*Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 397.)

To establish causation and damages, the plaintiff is required to prove that but for the defendant's negligent acts or omissions, he or she would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred.  (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241; accord, *DiPalma v. Seldman* (1994) 27 Cal.App.4th 1499, 1506-1507.)  This requirement essentially requires a "trial-within-a-trial" of the underlying case.  (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 834; accord, *Viner v. Sweet, supra,* at p. 1241.)

The trial-within-a-trial method does not recreate what the trier of fact would have done, but instead requires the jury to determine what a reasonable court or jury would have done.  (*Mattco Forge, Inc. v. Arthur Young & Co., supra,* 52 Cal.App.4th at p. 840.)  The standard is an objective one, with the malpractice jury to decide what should have been, not what the result would have been, or could have been, or might have been, had the matter been before a particular judge or jury.  (*Ibid.*; see also *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 973 (*Piscitelli*).)  Thus, if the issue in the underlying action was a factual one, the jury in the malpractice action must decide what the underlying trier of fact would have concluded.  (*Piscitelli, supra,* at pp. 969-971.)  "However, if reasonable minds cannot differ as to what would have happened had the attorney acted

otherwise, this issue can become a legal issue for the court.' (*Id.* at pp. 970-971, citing *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 864 ['"The question about what would have happened had [the lawyer] acted otherwise is one of fact unless reasonable minds could not differ as to the legal effect of the evidence presented"'].)" (*Blanks v. Shaw* (2009) 171 Cal.App.4th 336, 358, fn. omitted.)

**Expert Testimony at Trial**

Horn contends the trial court abused its discretion by admitting testimony from Rand's two expert witnesses, Timothy Walker and Brian Condon, because "[e]xperts are not permitted to opine on the law." Walker testified to the standard of care while Condon testified to causation. We disagree with Horn's contentions. Expert testimony is a required in a legal malpractice action in determining the requisite standard of care. As to Horn's contention that Condon should not have been allowed to testify on causation, we have no reason to find that the court abuse its discretion, but need not address the merits of the issue at length—the jury's finding that Rand's conduct was within the standard of care renders moot the issue of causation. In other words, Horn cannot establish prejudice because the jury had never had to address the issue of causation or damages.

Horn filed motions in limine to preclude "Rand from offering into evidence testimony or opinions from any witness or defense expert witness regarding issues of the law of arbitration, including the application and interpretation of JAMS rules, California law, and jurisdiction issues related to arbitration." Moreover, Rand's experts "will also testify about [their] opinions regarding any result or outcome in this matter based solely upon [their] understanding of the JAMS rules and law of arbitration." The trial court's tentative ruling denied both of Horn's in limine motions. The court's tentative ruling stated that Horn "seeks to preclude [Rand's] experts from testifying about opinions concerning the law. This is a legal malpractice case, which involves compliance with the appropriate standard of care for attorneys. Expert testimony on that question will

9

necessarily involve some explanation of legal issues and procedures. The court will permit witnesses on both sides to present appropriate testimony on legal issues and procedures. The parties may make objections which the court will consider in context."[1]

The trial court has broad discretion in admitting expert testimony, and we review the court's admission of expert testimony for clear abuse of its discretion, looking to whether the court's ruling exceeds the bounds of reason in light of all of the circumstances of the case. (*Piscitelli, supra,* 87 Cal.App.4th at p. 972; *Burton v. Sanner* (2012) 207 Cal.App.4th 12, 18; see also *Easterby v. Clark* (2009) 171 Cal.App.4th 772, 778 (*Easterby*).) An erroneous ruling does not compel reversal in the absence of a miscarriage of justice. (*Easterby, supra,* at p. 783, citing Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836.) "'[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*Easterby, supra*, at p. 783.)

As a general matter, an attorney's standard of care must be established by expert testimony. (See, e.g. *Wilkinson v. Rives* (1981) 116 Cal.App.3d 641, 648 ["Since there was no such expert testimony, there is no evidence from which the trier of fact could have found negligence on the part of respondent Rives"].) "The fact of breach is proved by expert opinion on whether the attorney followed the standards of skill and diligence prevailing in the profession." (1 Witkin, Cal. Procedure (5th ed. 2008) Attorneys, § 291,

---

[1] The record on appeal does not include a reporter's transcript of the hearing on the motions in limine or a suitable substitute. It is the burden of the appellant to produce an adequate record on appeal which demonstrates that the trial court erred. (*Ballard v. Uribe* ( 1986) 41 Cal.3d 564, 574-575; *Baker v. Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057, 1060.) After inviting the parties to brief this issue, Horn failed to file a motion to augment the record and instead included an unsigned and uncertified reporter's transcript of the hearing. In the absence of a proper record on appeal, the trial court's rulings are presumed correct and must be affirmed. (*Maria P. v. Riles* (1987) 43Cal.3d 1282, 1295-1296.)

p. 367.) Expert testimony is not required only in rare cases where the failure of the attorney is so clear that reasonable minds could not differ, or the nature of the omission is such that a trier of fact would not require the assistance of an expert to understand why it did, or did not, violate the standard of care. (*Wilkinson v. Rives, supra,* at p. 648 [noting existence of exception to requirement of expert testimony, but finding it inapplicable].) Examples of the exceptional circumstances in which no expert testimony is needed to establish a violation of the standard of care include a total failure to conduct any research on a point of law (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1093) or advising a client to commit an act that is a violation of the Penal Code (*Goebel v. Lauderdale* (1989) 214 Cal.App.3d 1502, 1509).

We begin our analysis by noting that Horn presented expert testimony by Howard Kornberg *on both the standard of care and causation*. As described in Horn's opening brief in this court, Kornberg testified that Rand's failure to object to the delay in the award of attorney fees fell below the standard of care. Kornberg testified to his opinion that the arbitrator lost jurisdiction due to the delay in ruling, and a timely objection by Rand would have prevented any further arbitration or court action on the issue of attorney fees. Against this backdrop of testimony, we now address Horn's claims that Rand should not have been permitted to introduce expert testimony on the standard of care and causation.

The trial court properly admitted Walker's testimony on the standard of care. Walker's testimony was admissible to refute Kornberg's expert testimony on the standard of care. Testimony by Rand's expert as to the standard of care clearly tended to prove an issue in dispute. (Evid. Code, §§ 210, 351.)

Rand was entitled to present Walker's expert testimony regarding when the hearing closed, as that is a matter beyond a layperson's common knowledge. Reasonable minds could differ as to whether the hearing closed on September 2, 2010, as argued by Horn, or at the later date announced by Judge Schiavelli. The trial court denied both parties' motions for summary judgment for this very reason, because "[t]he evidence

11

raises triable issues as to whether the 9/2/10 hearing was closed and the attorney fee claims were submitted for decision on that date." As the trial court correctly noted, the jury "cannot operate solely on argument by the attorneys. They have to have some frame of reference . . . I recognize that the jury has to have some kind of a legal framework in which to analyze these difficult questions that are in no means a—an environment in which jurors are familiar. So they've got to have some guidance, and both sides have the opportunity to provide them with that guidance." The court encouraged the parties to make specific objections to the expert testimony, where appropriate.

Horn's claim that Walker's testimony was inadmissible is based on the faulty premise that, as a matter of law, the arbitration closed on September 2, 2010. This persistently asserted proposition is simply wrong. JAMS Rule 22(h) expressly requires that the arbitrator "declare the Hearing closed" when the arbitrator "determines that all relevant and material evidence and arguments have been presented, and any interim or partial Awards have been issued." There is substantial evidence in the record to support a finding that the hearing did not close until November 12, 2010, shortly before issuance of Judge Shiavelli's award of attorney fees. Walker's testimony, if believed, would tend to prove that Rand acted within the standard of care in recommending that Horn not make a futile objection to the attorney fee award.

Horn's claim that admission of Condon's testimony on causation was error does not require extended discussion. Admission of this testimony on causation was not prejudicial in this case. The jury found that Rand was not negligent, so it never reached the issue of causation. Testimony on causation played no role in the judgment in favor of Rand. (Cal. Const., art. VI, § 13.) Any error was necessarily nonprejudicial.

Moreover, the trial court did not abuse its discretion in allowing Condon's testimony. Horn puts misplaced reliance on the holding in *Piscitelli, supra,* 87 Cal.App.4th 953, for the proposition that Condon was erroneously entitled to testified on

12

causation.[2] *Piscitelli* outlined the limitations of expert testimony on causation in a legal malpractice case, but it does not stand for the proposition that expert opinion on causation is never admissible in a legal malpractice action. Our review of Condon's testimony reveals that it primarily focused on explaining the remedies that remained available to Nemecek had the motion to confirm the arbitration award been denied, such as a new arbitration or an action at law on the contract. This testimony directly refuted Kornberg's testimony on behalf of Horn, and was unquestionably admissible for that purpose. An expert may testify to an ultimate fact (Evid. Code, § 805), and we are satisfied that in the context of this case Condon's testimony did not usurp the jury's function.

**Jury Instructions**

Horn contends the trial court erred in refusing to instruct the jury on the law and permitting the jury to rely on the expert witnesses' testimony to interpret California law and JAMS rules. He states that the jury was not given proper instruction on "[c]losure of the hearing and the effect that a timely made objection to the delayed ruling."

Horn submitted numerous proposed jury instructions on the law and rules of arbitration, most of which the trial court refused to give. Horn points to only one of his proposed jury instructions that he contends was improperly denied: "In a private arbitration, if an arbitrator fails to rule within the agreed upon time limits and the arbitrator loses jurisdiction to rule, the only remedy available to the aggrieved party is to sue the arbitrator for breach of contract." The trial court found that this proposed jury instruction, like the other instructions submitted by Horn and denied by the court, "incorrectly state[s] the law," is "based on untenable legal theory," and is

---

[2] Horn also relies on *Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1181, for the proposition that experts cannot opine on the law. However, Horn's reliance is misplaced as it is a non-legal malpractice case and expert testimony is required in malpractice actions to assist the jury in deciding the requisite standard of care.

13

"argumentative, and . . . misleading." The trial court did not err in denying this instruction.

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) "'"A reviewing court must review the evidence most favorable to the contention that the requested instruction is applicable since the parties are entitled to an instruction thereon if the evidence so viewed could establish the elements of the theory presented. [Citation.]" [Citation.]'" (*Logacz v. Limansky* (1999) 71 Cal.App.4th 1149, 1157.)

We agree that Horn's instruction is argumentative in stating that there is only one remedy if an arbitrator does not rule in a timely fashion, because there was abundant contrary evidence for the jury to consider. The instruction incorrectly assumes there is only one remedy, ignoring valid testimony regarding other available remedies. Nemecek could send the matter back to arbitration if jurisdiction is lost and the attorney fees award is vacated (Code Civ. Proc., § 1287), or initiate an action in superior court for breach of contract. The proposed instruction is also an inaccurate statement of the law because it presupposed that Judge Schiavelli could have been sued, which runs counter to JAMS Rule 30(c), which expressly absolve the arbitrator and JAMS of any liability "for any act or omission in connection with any Arbitration conducted under these Rules." Moreover, "California common law has recognized a narrow exception to arbitral immunity: the immunity does not apply to the arbitrator's breach of contract by failing to make any decision at all. (*Baar v. Tigerman* (1983) 140 Cal.App.3d 979, 983-985 []; see Knight et al., California Practice Guide: Alternative Dispute Resolution (The Rutter Group 2005), ¶ 5:41, p. 5–28.)." (*Morgan Phillips, Inc. v. JAMS/Endispute, L.L.C.* (2006) 140 Cal.App.4th 795, 801.) Here, Judge Schiavelli did not fail to make *any* decision at all; he made a decision as to the legal malpractice phase and issued an attorney fees award.

Even if the trial court erred by refusing this instruction, the error would not warrant reversal of the judgment. "Alleged instructional error is reviewed under the

14

prejudicial error standard.  Under this standard, the judgment is affirmed unless the appellant can show an error that was so prejudicial a miscarriage of justice occurred.  [Citation.]"  (*Mendoza v. Club Car, Inc.* (2000) 81 Cal.App.4th 287, 306.)  "Thus, when the jury receives an improper instruction in a civil case, prejudice will generally be found only '"[w]here is seems probable that the jury's verdict may have been based on the erroneous instruction."'"  (*Soule v. General Motors Corp., supra,* 8 Cal.4th at p. 574.)  When determining whether an error of instruction or instructional omission was prejudicial, the court must evaluate the state of the evidence, the effect of other instructions, the effect of counsel's arguments, and any indications by the jury itself that it was misled.  (*Id.* at pp. 580-581.)  Horn's proposed instruction does not address the issue of standard of care, the issue upon which the jury decided the case.  Because the verdict was predicated upon a finding that Rand was not negligent, the exclusion of this instruction could not have adversely affect the verdict and Horn could not have been prejudiced by its omission.

Horn complains about an instruction that was given, but does not adequately explain how that instruction was erroneous:  "In a private arbitration before JAMS, an arbitrator may lose jurisdiction to rule if he does not rule within the agreed-upon time limits."  This instruction was modified from the version proposed by Horn, which argumentatively stated that the arbitrator "loses jurisdiction," as opposed to the permissive "may lose" jurisdiction language that was given to the jury.  The instruction, as given, is neutral and is a correct statement of law.  Moreover, Horn does not explain how this instruction was prejudicial.

The jury heard expert testimony, and received the relevant arbitration materials such as the retainer agreement, the demand for arbitration, and JAMS Rule 30.  The court allowed counsel to argue the appropriate conclusion to be reached based upon the totality of the evidence.  In their closing arguments, both parties argued the conclusions to be drawn from the relevant case law, statutes, and arbitration rules.  Horn makes no showing that the jurors were confused by the arguments or the instructions that were given, or that

15

they were mislead in any significant fashion.  Absent some contrary indication in the record, we presume the jury followed the court's instructions and that its verdict reflects the limitations the instructions imposed.  (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803-804; *People v. Bradford* (1997) 15 Cal.4th 1229, 1337.)

The jury instructions properly reflected the role of expert testimony as follows: "The court has permitted experts to testify as to their impressions or opinions about the law.  If those impression [*sic*] or opinions conflict with these instructions, you are to reject the expert's impressions or opinions and rely solely on these instructions."  While instructing on causation, the court left the determination up to the jury "[i]n determining how an arbitrator should have ruled on a disputed issue the proper standard to use is an objective standard, what a reasonable arbitrator would have done and not what this particular arbitrator would have done."  These instruction are correct statements of the law which provided the jury with the necessary guidance.

Assuming the trial court erred in failing to include a jury instruction detailing the relevant California arbitration laws and JAMS rules, the error did not result in a miscarriage of justice.  The judgment on the special verdict form reveals that the jury found Rand was not negligent.  The standard of care instruction given to the jury was the professional negligence standard of care instruction contained in the Judicial Council of California Civil Jury Instructions No. 600:  "An Attorney is negligent if he fails to use the skill and care that a reasonably careful Attorney would have used in similar circumstances.  This level of skill, knowledge, and care is sometimes referred to as 'the standard of care.'  [¶]  You must determine the level of skill and care that a reasonably careful Attorney would use in similar circumstances based only on the testimony of the expert witnesses who have testified in this case."  (See *Lipscomb v. Krause* (1978) 87 Cal.App.3d 970, 976 ["Expert evidence in malpractice suit is conclusive as to proof of the prevailing standard of skill and learning in the locality and of the propriety of particular conduct by the practioner in particular instances because such standard and skill is not a matter of general knowledge'"].)  We are satisfied the jury possessed all the

16

law and evidence required to make a fair determination whether Rand's advice to Horn fell within the standard of care. The jury heard the expert testimony on behalf of Horn and Rand on the standard of care, and reasonably concluded Horn had not carried his burden of establishing negligence. No additional jury instructions were required.

**Arbitrator's Emails**

Horn contends the trial court abused its discretion in admitting into evidence Judge Schiavelli's three emails from November 2010 under the state of mind exception (Evid. Code, § 1250)[3] to the hearsay rule, because they were not relevant and the purpose of their admission eviscerated the hearsay rule. He further argues that the emails were not authenticated, lacked foundation and personal knowledge, and were hearsay. (See Evid. Code, §§ 402, 702, 1200, & 1400.) As discussed below, the emails were relevant to the jury's determination of whether the arbitration was closed on September 2, 2010. None of the grounds alleged by Horn required exclusion of Judge Schiavelli's emails.

We review any ruling by the trial court as to the admissibility of evidence for abuse of discretion. (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 639, citing *People v. Alvarez* (1996) 14 Cal.4th 155, 201.) We do not substitute our judgment for that of the trial court and may grant relief only when the asserted abuse of discretion constitutes a miscarriage of justice. (*Ajaxo Inc. v. E\*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 44.)

---

[3] Evidence Code section 1250 states: "Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when: [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or [¶] (2) The evidence is offered to prove or explain acts or conduct of the declarant." Evidence Code section 1252 states: "Evidence of a statement is inadmissible under this article if the statement was made under circumstances such as to indicate its lack of trustworthiness."

In his motion in limine No. 2, Horn moved to exclude evidence of Judge Schiavelli's posthearing emails on November 10, 2010, November 11, 2010, and November 14, 2010. On July 25, 2013, the trial court tentatively ruled on the parties' motions in limine for trial. The court denied Horn's motion in limine No. 2, finding "[t]he awards are part of the record of the arbitration proceeding in which [Horn] claims that [Rand] committed malpractice. They are not hearsay. [Rand] acted upon that record and the jury is entitled to know what the parties were presented with and relied upon; particularly as to [Rand], who received and evaluated them. In addition, the emails reflect the arbitrator's views as to whether the proceedings were closed after the hearing on 9/2/10; and they are circumstantial evidence of whether the attorneys and the arbitrator considered the arbitration submitted."

Judge Schiavelli's November 2010 emails were certainly relevant given the fact that he was the only one with the power to close the hearing and was prohibited from testifying at trial pursuant to JAMS Rule 30[4] and Evidence Code section 703.5.[5] Horn's legal malpractice action is premised upon the notion that the hearing was closed on September 2, 2010, and therefore, pursuant to the JAMS rules, an award was required to be issued within 30 days, and Rand's failure to make an objection was the basis for liability in this case. Each of the arbitrator's emails tend to prove Judge Schiavelli had not closed the hearing on September 2, 2010. The November 10, 2010 email indicates he was expecting further briefing from the parties and inquired as to why the parties failed to respond to his earlier invitation in September 2010 to address the *Center for Biological*

---

[4] JAMS Rule 30 states in pertinent part: "(a) The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceedings involving the Parties and relating to the dispute that is the subject of the Arbitration."

[5] "No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding . . . ."

*Diversity* case. The November 11, 2010 email invited both counsel again to provide further briefing and address the case. The last email sent on November 14, 2010, acknowledges that the arbitrator closed the hearing on November 12, 2010, as no parties provided further briefing on the case.

We reject the argument that Judge Schiavelli's emails were hearsay. Hearsay is an out of court statement offered to prove the truth of the matter asserted. (Evid. Code, § 1200.) The emails in question have relevance without regard to their truth. As the trial court correctly ruled, the fact that Judge Schiavelli sent emails in November 2010 is circumstantial evidence the hearing was not closed. The emails were not offered to prove that it was true that a particular case was relevant to the issue of attorney fees or that Judge Schiavelli thought the parties would respond. Because the emails were admissible without regard to the truth of the matter asserted, we need not discuss Horn's contention that the emails were improperly received under the state of mind exception to the hearsay rule under Evidence Code section 1250.

We reject Horn's contention that the emails were inadmissible on the grounds of a lack of authentication and lack of foundation. The authentication and foundation for the emails was established by the recipients of the emails. The recipients' testimony provided "evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is." (Evid. Code, § 1400, subd. (a).)

**JAMS's Business Records**

Horn contends the trial court abused its discretion in excluding JAMS's business records containing notes reflecting conversations the case manager had with Judge Schiavelli. Horn argues that JAMS's business records are admissible under the business records exception to the hearsay rule under Evidence Code section 1271.[6] We disagree.

---

[6] Evidence Code section 1271 provides, "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered

19

On direct examination of Horn's expert witness Kornberg, Horn's counsel attempted to introduce JAMS's business records. Rand's counsel objected to its admission on hearsay grounds, which resulted in an unrecorded sidebar conference. A subsequent hearing on the record was held on admission of JAMS's records after the jury left the courtroom. The court sustained Rand's counsel's objection on two grounds, relevancy and hearsay. As to relevancy, the court ruled the JAMS's business records were obtained "after the fact and was not known by Mr. Rand or Mr. Murphy or anybody else. It was not anything that they acted upon or that they—that is a fair reflection of the standard of care and whether or not there was malpractice in objection or not." As to hearsay, the court held "[w]hile the business records are certainly admissible as business records, I think it's well settled that not every aspect of a business record is admissible. There are multiple levels of hearsay, and these are [the case manager's] reports of her side of conversations with the arbitrator and portions of what the arbitrator said to her, and I don't find that to be admissible hearsay as an act, condition, or event that relates to the proceedings here." The court further stated "not everything within a business record is admitted for all purposes, particularly in a case like this where third parties are relying upon it for proof of extraneous matters."

Only relevant evidence is admissible. (Evid. Code, § 350.) Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id.,* § 210.) We review any ruling by the trial court pertaining to the admission of evidence for abuse of discretion. (*People ex rel. Lockyer v. Pacific Farming Co., supra,* 77 Cal.App.4th at p. 639.)

---

to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

20

The trial court did not abuse its discretion in ruling that the JAMS's business records were irrelevant.   Unlike Judge Schiavelli's November 2010 emails, which were sent to the attorneys handling the attorney fees issue, the case manager's notes of her communications with Judge Schiavelli were private and not known to either party or their counsel.  Without knowledge of the conversations between the case manager and Judge Schiavelli, Rand did not reasonably rely on these records in determining whether the hearing closed on September 2, 2010, and the notes therefore have no bearing on whether Rand acted within the standard of care.  What Rand did know was that Judge Schiavelli had not formally pronounced the hearing closed in September, and to the contrary, his emails in November 2010 demonstrated the hearing remained open.

The JAMS's business records do not state that hearing closed on September 2, 2010.  Horn points to one of the case manager's notations on September 2, 2010, which states, "Per [Judge Schiavelli] hearing went well.  He will take [approximately] 2 weeks for issuance of ruling."  This notation demonstrates Judge Schiavelli was going to issue an award within a given time, not that the hearing closed on September 2, 2010.  The only other notations discuss when Judge Schiavelli intends to make a ruling and the case manager following up on the status of the forthcoming ruling.  In fact, a notation from the case manager on November 10, 2010, demonstrates that Judge Schiavelli required and was waiting for further briefing from the parties.  The case manager stated Judge Schiavelli "noted that parties did not brief issue re Center for Biological Diversity as he requested during their hearing . . . ."  Even if admitted the records reflect the arbitrator's intent not to close the hearing on September 2, 2010.

Horn's contention that the JAMS's business records fall within the business records exception to the hearsay rule is without merit.  When multiple hearsay is offered, an exception for *each* level of hearsay must be found in order for the evidence to be admissible.  (Evid. Code, § 1201; *People v. Alexander* (2010) 49 Cal.4th 846, 876; *People v. Ayers* (2005) 125 Cal.App.4th 988, 995.)  The records contain the case manger's statements about what Judge Schiavelli told her, which constitutes two levels of

21

hearsay. Horn does not address this double hearsay problem in his opening or reply brief. His contention that the JAMS's business records were maintained in the ordinary course of business and they contained entries by the case manager, who was the custodian of records, is not a sufficient answer to the hearsay problems associated with the records.

After the trial court sustained Rand's counsel's initial objection to the JAMS business records, Horn for the first time redacted parts of the records which were the comments from Judge Schiavelli recorded by the case manager. Horn's counsel told the trial court he "removed all the matters that could be even colorably be called hearsay." The court however was unmoved by this change and ruled that, "I was asked to admit the entire [JAMS] records . . . including the comments that have been removed. But in all events, it doesn't change my ruling." Assuming the multiple hearsay problem was resolved by redacting Judge Schiavelli's comments as recorded by the case manager, the records remained inadmissible on the relevancy grounds discussed above.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to Respondent Michael J. Rand.


KRIEGLER, J.


We concur:


TURNER, P. J.


GOODMAN, J. *

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.