Filed 5/12/15  Stapke & Harris v. Raskov CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| STAPKE & HARRIS, LLP, | B252176 |
| Cross-complainant and Respondent, | (Los Angeles County Super. Ct. No. BC433843) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |
| DANIEL RASKOV, | |
| Cross-defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein April 21, 2015 be modified as follows:

1.  On page 2 in the third full paragraph beginning with "Raskov and Aronson paid Stapke & Harris $91,000," the term "$91,000" is changed to "just under $93,500" so that the sentence reads:

> Raskov and Aronson paid Stapke & Harris just under $93,500, constituting the firm's pro-rated share of the attorney fees awarded by the probate court; they paid the remaining $29,000 to Stapke & Harris's predecessor counsel in the probate action and terminated Stapke & Harris's employment with respect to the probate action.

2.  On page 2, in the beginning of the second sentence under section 2, insert the dependent clause, "According to the complaint seeking a trial de novo," which will also require changing "In December" to "in December" so that the sentence now reads:

> According to the complaint seeking a trial de novo, in December 2006, pursuant to the terms of the retainer agreement, Stapke & Harris filed a nonbinding fee arbitration claim with the Los Angeles County Bar Association in accordance with the Mandatory Fee Arbitration Act (MFAA) (Bus & Prof. Code, §  6200 et seq.).

3.  On page 6, in footnote 1, replace "January 31" with "March 10" so that footnote 1 now reads:

> On March 10, 2014 the court awarded Stapke & Harris costs and attorney fees in connection with its prosecution of the cross-complaint.  That order is the subject of a separate appeal.

There is no change in the judgment.  Daniel Raskov's petition for rehearing is denied.

_____

PERLUSS, P. J.            ZELON, J.            IWASAKI, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 4/21/15  Stapke & Harris v. Raskov CA2/7 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STAPKE & HARRIS, LLP,<br><br>    Cross-complainant and Respondent,<br><br>v.<br><br>DANIEL RASKOV,<br><br>    Cross-defendant and Appellant. | B252176<br><br>(Los Angeles County<br>Super. Ct. No. BC433843) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Daniel Raskov, in pro. per., for Cross-defendant and Appellant.

Sandra J. Gamboa for Cross-complainant and Respondent.

_____

Daniel Raskov appeals from the judgment entered after a jury found him liable to his former lawyers, Stapke & Harris, LLP, on the firm's cross-complaint for unpaid legal fees. Raskov contends Stapke & Harris lacked standing to prosecute its action. He also contends the court erred in prohibiting expert testimony and refusing to instruct the jury about legal malpractice. In addition, he insists the evidence is insufficient to support the jury's damage award and the court erred in awarding Stapke & Harris prejudgment interest. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Underlying Probate Matter*

In July 2005 Raskov and his sister, Michele Aronson, the primary beneficiaries of their deceased father's irrevocable trust, retained Stapke & Harris on an hourly basis to represent both of them in a probate action scheduled to go to trial the following month. In their probate petition Raskov and Aronson alleged the trustee, their stepmother, had wrongfully sold real property belonging to the trust (the 54th Street property) and had deposited the proceeds in her own account. They sought removal of the trustee for breach of fiduciary duty and an accounting. The trustee vigorously opposed the petition, arguing the 54th Street property had belonged to her personally, not the trust.

The trial was continued twice: once at Stapke & Harris's request and once at the trustee's request. On August 24, 2006, after a trial on the petition, the probate court removed the stepmother as trustee and ordered her to return to the trust the proceeds from her sale of trust property. On October 2, 2006 the court awarded Raskov and Aronson $120,000 in attorney fees and costs (less than they had requested) to be paid by the trust. Raskov and Aronson paid Stapke & Harris $91,000, constituting the firm's pro-rated share of the attorney fees awarded by the probate court; they paid the remaining $29,000 to Stapke & Harris's predecessor counsel in the probate action and terminated Stapke & Harris's employment with respect to the probate action.

2. *The Nonbinding Arbitration for Attorney Fees*

In November 2006 a dispute arose over the additional fees Stapke & Harris claimed were due under the written retainer agreement with Raskov and Aronson. In

4

December 2006, pursuant to the terms of the retainer agreement, Stapke & Harris filed a nonbinding fee arbitration claim with the Los Angeles County Bar Association in accordance with the Mandatory Fee Arbitration Act (MFAA) (Bus. & Prof. Code, § 6200 et seq.). The firm demanded an additional $48,357.89 in attorney fees and costs plus $20,495.55 in prejudgment interest in connection with work it had performed in the probate matter. Raskov and Aronson objected to the amount sought, insisting the probate court's order was res judicata as to the amount of necessary and reasonable attorney fees incurred. They also argued Stapke & Harris had committed professional malpractice in the probate action by failing to ensure an appraiser would be available to testify to the fair market value of the 54th Street property, an omission that prevented them from demonstrating the trust property had been sold for a price substantially below market value. This malpractice, they claimed, had caused them damage far exceeding what they might otherwise owe the firm. Finally, they asserted Stapke & Harris had egregiously overbilled for its efforts and charged them for work not actually performed and for costs not actually incurred.

After several delays the matter finally proceeded before a three-member arbitration panel in June and July 2009. During arbitration, Stapke & Harris adjusted its demand to $43,013.87. In February 2010 the arbitration panel issued a written decision concluding the probate court's order did not prelude Stapke & Harris from recovering additional fees pursuant to the parties' retainer agreement. The arbitrators awarded Stapke & Harris and Mark Stapke, the law firm's principal, $39,285.07 in unpaid fees plus $6,731.12 in interest from September 3, 2005 to November 16, 2006 for a total amount of $46,016.19, as well as additional interest to be calculated as of November 16, 2006 at the rate of 10 percent.

3. *Aronson's Request for a Trial de Novo and Stapke & Harris's Cross-complaint Against Aronson and Raskov for Fees*

On March 16, 2010 Aronson filed this action against Stapke & Harris in Los Angeles County Superior Court seeking a judicial declaration that the Riverside County Superior Court, the court in the underlying probate matter, had exclusive jurisdiction over

5

the fee dispute. Alternatively, in the event the Los Angeles County Bar Association's arbitration panel had authority to consider Stapke & Harris's fee claim under the MFAA, Aronson requested a trial de novo of the arbitration award pursuant to Business and Professions Code section 6204.

Stapke & Harris answered the complaint and filed a cross-complaint against Aronson and Raskov asserting claims for breach of contract, quantum meruit and common counts for open book and account stated. Raskov and Aronson answered the cross-complaint and asserted as an affirmative defense, among others, that any claim for fees was offset by the greater damage caused by Stapke & Harris's legal malpractice during the probate proceedings when it failed to present evidence of the fair market value of the 54th Street property at the time the trustee had sold it.

4. *Stapke & Harris's Oral Motion in Limine To Exclude Expert Testimony on Legal Malpractice*

Prior to trial Aronson and Raskov designated Jeffrey Schoenherr, a probate attorney, to testify "regarding the real property appraisals, valuations and attorney fees in the probate matter[]." The expert declaration did not identify standard of care or legal malpractice as topics on which Schoenherr was expected to opine. However, at his deposition Schoenherr testified he believed he had been designated an expert to, among other things, "opine as to whether or not failure to bring a certified appraisal to [the underlying probate trial] might be negligence per se." Schoenherr testified at his deposition, "I was not able to really conclude that it is negligence per se. But I believe it is below a standard of care that if you want to prove the value of real property and it's an important element of the case, you need to bring a certified appraisal." Schoenherr also explained he could not comment specifically on whether Stapke & Harris had been negligent in the probate proceeding because "I don't have enough facts to state that what [Mark Stapke]—the way he acted was negligence. Because I don't know what he did or didn't do." He also confirmed there were no additional opinions he expected to give in the matter.

6

After Stapke & Harris's counsel had concluded his questions at the deposition, counsel for Raskov and Aronson asked Schoenherr to assume the following facts: (1) The parties had known the date of trial for five months; (2) the value of real property was at issue in the probate action; and (3) the attorney for the party prosecuting the action had obtained an appraisal of the property at issue. Based on this hypothetical set of facts, Raskov's counsel asked Schoenherr to opine on whether it would fall below the standard of care for the probate attorney to look at the appraisal for the first time seven days before trial. Schoenherr testified in his opinion it would. He also stated it is generally a simple matter, even on short notice, to retain an appraiser to testify at a trial in probate court.

At the beginning of trial Stapke & Harris orally moved, over Aronson and Raskov's objection, to limit Schoenherr's testimony to the matters identified in his expert witness declaration and exclude any opinion whether Stapke & Harris's conduct during the probate proceeding was below the standard of care. The court granted the motion on the ground standard of care was outside the scope of Schoenherr's expert declaration, there had been no attempt to amend the declaration, and no agreement had been made to expand the scope of Schoenherr's expert opinion testimony.

5. *The Jury Trial on Stapke & Harris's Cross-complaint*

The only claims tried to the jury were Stapke & Harris's causes of action for its attorney fees. Both sides provided expert testimony on the value of services provided and the propriety of the invoices submitted by Stapke & Harris. As to the appraisal issue, Mark Stapke testified Raskov and Aronson's predecessor counsel had designated certified appraiser, Mike Chambers, to testify at the probate trial, originally scheduled for August 2005. Stapke spoke to Chambers in July 2005 and believed he would be a good expert witness. Ten days before the newly-scheduled trial date, Stapke & Harris attempted unsuccessfully to locate Chambers to prepare him for trial but could not find him, and Chambers had left no forwarding information. According to Stapke, Chambers had "disappeared." In light of this development, he recommended to Aronson and Raskov, both orally and in writing, that a new appraiser be obtained for trial. He explained this would likely result in a continuance of the trial to permit opposing counsel

7

the opportunity to depose the new expert, but it was necessary in order to protect any claim they might have to restitution for the below-market sale. Raskov and Aronson, however, rejected his advice and insisted the trial go forward without an appraiser because they believed the expeditious removal of their stepmother as trustee was more important.

Raskov testified he did not remember Stapke & Harris telling him they could obtain a continuance, but it did not matter in any event because the court had signaled in an earlier proceeding that the matter was going to trial and further continuances would not be forthcoming. He told the jury Stapke & Harris did not look at Chambers's appraisal until 10 days before trial and realized it was deficient—it had not been signed and there were other errors—and would not be admissible. He and his sister had tried to find an appraiser on short notice but were unsuccessful. He believed Stapke & Harris's conduct had cost him and his sister $75,000.

Schoenherr testified it would have been a relatively simple matter to find an appraiser to testify at trial, even on short notice.

The jury returned a special verdict in favor of Stapke & Harris and awarded the firm $39,523.87 in fees. The trial court rejected Raskov and Aronson's request to instruct the jury on the elements of legal malpractice because there had been no evidence on the standard of care during the trial; the special verdict form submitted to the jury did not invite the jury to decide whether any offset for legal malpractice was available. On August 26, 2013 the trial court awarded Stapke & Harris prejudgment interest in the amount of $32,341.17 and entered judgment in favor of the law firm for $71,865.04.[1]

6. *Raskov's Posttrial Motions and Discovery of Stapke & Harris's Assignment of Its Assets During the Pendency of the Arbitration Proceeding*

On September 5, 2013 Raskov filed a combined notice of motion for judgment notwithstanding the verdict and notice of intent to move for new trial. In his supporting

---

[1] On January 31, 2014 the court awarded Stapke & Harris costs and attorney fees in connection with its prosecution of the cross-complaint. That order is the subject of a separate appeal.

8

papers, he primarily argued the court erred in limiting Schoenherr's testimony and refusing to instruct the jury about legal malpractice. On September 23, 2013, while those posttrial motions were pending, third party THC, Inc. filed a document entitled "Acknowledgment of Assignment of Judgment" advising the court: THC had become a secured third party creditor of Stapke & Harris in 2001 when it loaned the firm $150,000. The document also stated Stapke & Harris defaulted on its loan obligations to THC in December 2006. On January 19, 2007, pursuant to its security agreement with THC, Stapke & Harris assigned to THC "all . . . assets, accounts receivable, deposit accounts, credit card accounts, merchant accounts, judgment liens, real property, furniture, personal belongings . . . and any other property . . . now owned or hereafter acquired . . . ." THC's filing with the court included copies of the promissory note, security agreement and assignment. THC's filing also stated Stapke & Harris's cross-complaint had been prosecuted on its behalf "as allowed pursuant to Code of Civil Procedure section 368.5."

In his reply in support of his posttrial motions, Raskov argued for the first time that THC, not Stapke & Harris, was the real party in interest in this fee action and urged the court to dismiss Stapke & Harris's cross-complaint for lack of standing. As to the delay in requesting dismissal, Raskov claimed he did not know of the assignment until THC's filing of its acknowledgment, a fact strongly disputed by Stapke & Harris. After an extensive hearing, the court denied Raskov's motions.

## DISCUSSION

1. *Stapke & Harris Had Standing To Prosecute Its Action on Behalf of Its Assignee THC*

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (Code Civ. Proc., § 367; see *Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 353, fn. 2.) "'Real party in interest' has been generally defined as "any person or entity whose interest will be directly affected by the proceeding . . . ."" (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1178; accord, *Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031-1032 ["real party

9

in interest is one who has 'an actual and substantial interest in the subject matter of the action and who would be benefited or injured by the judgment in the action'"].)

Subject to limited exceptions not pertinent here, the real party in interest may transfer his or her right in a cause of action to a third party. (See Civ. Code, § 954 [a cause of action "arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner"]; *Essex Ins. Co v. Five Star Dye House*, *Inc.* (2006) 38 Cal.4th 1252, 1259 [recognizing assignability of cause of action arising out of an obligation under contract].) When this occurs, the assignee becomes the real party in interest, standing in the "'shoes of his assignor [and] taking his rights and remedies . . . .'" (*Essex,* at p. 1264; see *ibid.* ["[a]s the assignee of Sanchez's claim against Essex, Five Star stands in his shoes, and so may assert his right to recover any *Brandt* fees incurred in prosecuting the assigned claim"]; *Great Western Bank v. Kong* (2001) 90 Cal.App.4th 28, 31-32.) Typically, once the assignment of the chose in action occurs and the assignee becomes the real party in interest, the assignor no longer has standing to prosecute the claim. (*Searles Valley Minerals Operations Inc. v. Ralph M. Parson Service Co.* (2011) 191 Cal.App.4th 1394, 1402; *Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096.)

Raskov[2] contends Stapke & Harris lost standing to recover its fees when it assigned all its assets, including this chose in action, to THC in January 2007.[3] For its part, Stapke & Harris does not dispute that the right to prosecute its claim against Raskov for fees incurred in the probate matter is encompassed by the assignment of its assets to

---

[2]    Aronson settled the action and is not a party to this appeal.

[3]    Although Raskov raised this issue for the first time in his reply brief in support of his posttrial motions, questions of standing "involve jurisdictional challenges and may be raised at any time in the proceeding," including for the first time in posttrial motions or on appeal. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 438; accord, *McKinny v. Board of Trustees* (1982) 31 Cal.3d 79, 90; see generally *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 661 [when court has fundamental jurisdiction, that is, personal and subject matter jurisdiction, but otherwise acts in excess of its jurisdiction, judgment is voidable and may be attacked at any time in the proceeding before judgment becomes final].)

10

THC.  Rather, it contends it was legislatively authorized to initiate the cross-complaint on THC's behalf under Code of Civil Procedure section 368.5 (section 368.5).  As we explain below, section 368.5 does not assist Stapke & Harris.  Nevertheless, THC's consent to Stapke & Harris's prosecution of the action on its behalf defeats Raskov's standing argument.

a.  *Section 368.5 does not apply*

Section 368.5 permits a former real party in interest to continue to prosecute an action or proceeding that was pending at the time the interest was transferred:  "An action or proceeding does not abate by the transfer of an interest in the action or proceeding or by any other transfer of an interest.  The action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding."  (See *Arabia v. BAC Home Loans Servicing, L.P.* (2012) 208 Cal.App.4th 462, 472-473.)

At the time of the assignment in 2007, there was a pending proceeding—the fee arbitration.  Pursuant to section 368.5 Stapke & Harris could continue prosecuting its fee claim to completion in the arbitration proceeding notwithstanding its transfer of that right to THC, Inc.  However, once the arbitration concluded in 2010, there was no longer a pending proceeding, nor was there a pending action.[4]  Although the fee dispute continued to be litigated in the trial de novo at Aronson's request, a trial de novo under the MFAA is a new and separate action, not a "continuation" of the arbitration proceeding.  (See Bus. & Prof. Code, § 6204, subd. (c) ["the trial after arbitration shall be initiated by the commencement of an action in the court having jurisdiction . . . [and] shall proceed in accordance with the provisions of Part 2 . . . of the Code of Civil Procedure, concerning civil actions generally"]; see generally *Maynard v. Brandon* (2005) 36 Cal.4th 364, 373.  Thus, Stapke & Harris's reliance on section 368.5 alone to support its standing in this action is misplaced.

---

[4]    Code of Civil Procedure section 22 defines an "action" as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right."

### b. *Although section 368.5 does not apply, THC's consent to Stapke & Harris's prosecution of this action on its behalf defeats Raskov's standing argument*

The purpose of requiring a cause of action to be prosecuted by the real party in interest is to protect the defendant "against whom a judgment may be obtained, from further harassment or vexation at the hands of other claimants to the same demand." (*Giselman v. Starr* (1895) 106 Cal. 651, 657; accord, *Anheuser-Busch, Inc. v. Starley* (1946) 28 Cal.2d 347, 351-352; *Greco v. Oregon Mutual Fire Ins. Co.* (1961) 191 Cal.App.2d 674, 687 (*Greco*).) That concern is not present when "a judgment for or against the nominal plaintiff would protect [the defendant] from any action upon the same demand by another, and when, as against the nominal plaintiff, [the defendant] may assert all defenses and counterclaims available to him were the claim prosecuted by the real owner." (*Philbrook v. Superior Court* (1896) 111 Cal. 31, 34-35; accord, *Giselman,* at p. 651; *Anheuser-Busch,* at p. 352 ["'[w]here as against the party suing, defendant can urge any defenses he could make against the real owner, then there is an end of the defendant's concern and with it of his right to object; for so far as he is interested, the action is being prosecuted in the name of the real party in interest'"].) For this reason, it is well settled that, when "an assignee [of a chose in action] consents that the suit be brought by his assignor, an objection that the plaintiff is not the real party in interest will not be ground for reversal because the defendant is fully protected from future action, and the purpose of any objection to the suit upon that ground has been served." (*Greco,* at p. 687; accord, *Giselman,* at p. 658; *Philbrook,* at pp. 34-35; *Mosier v. Suburban Estates, Inc.* (1934) 137 Cal.App. 574, 576; *Reidy v. Young* (1931) 119 Cal.App. 322, 324.)

Here, THC's consent to Stapke & Harris's prosecution of this action is evident in both the language of the security agreement and the assignment. (See *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 [absent conflicting extrinsic evidence, interpretation of contract or written instrument is question of law]; *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126. [same].) The security agreement required Stapke & Harris, "at its own expense, to keep

12

the Collateral in good standing" including "defend[ing] at its expense any proceeding which may affect title to or Creditor's security interest in any Collateral." The security agreement thus authorized Stapke & Harris's defense of claims by Aronson and Raskov as well as its efforts to collect fees owed. Significantly, nothing in Stapke & Harris's assignment of its assets expressly superseded the security agreement or otherwise vitiated the firm's obligation to protect THC's interest in the firm's assets. In fact, the assignment, undertaken "pursuant to the Secured Promissory Note and Security Agreement," included in its purview all assets "now owned or hereafter acquired," making clear it contemplated that additional assets would be pursued and/or obtained by Stapke & Harris after the assignment was executed. Moreover, in its own posttrial filing in this case, THC acknowledged that Stapke & Harris had prosecuted this action on THC's behalf, an acknowledgment that both reinforces our interpretation and relieves Raskov from any risk of a future claim against him by THC to the fees at issue. Raskov has not alleged an inability to assert a defense against Stapke & Harris that he could otherwise assert against THC. (See *Giselman v. Starr, supra,* 106 Cal. at p. 658 ["[i]f, under such circumstances, the defendant claims another to be the real owner, he must support his right to make that claim by showing that he has some equity or defense against the real owner which he cannot maintain against the *prima facie* legal owner"].) Accordingly, as far as Raskov is concerned, THC's status as the party with legal title to the chose in action is not grounds for reversal. (*Greco, supra,* 191 Cal.App.2d at p. 687.)[5]

2. *The Trial Court Did Not Abuse Its Discretion in Prohibiting Raskov's Expert from Opining at Trial on Stapke & Harris's Legal Malpractice*

Any party may demand the mutual and simultaneous exchange of expert witness information. (Code Civ. Proc., § 2034.210, subd. (a).) Such an exchange must include an expert witness declaration signed by the attorney for the party designating the expert

---

[5]    In light of our holding that THC consented to Stapke & Harris's prosecution of the claim for fees on its behalf, we need not reach Raskov's other challenges to Stapke & Harris's standing, all of which are premised on Stapke & Harris's own status if it were deemed the legal owner of the chose in action.

and provide, among other things, "[a] brief narrative statement of the general substance of the testimony the expert is expected to give." (Code Civ. Proc., § 2034.260, subd. (c)(2); see *Bonds v. Roy* (1999) 20 Cal.4th 140, 148.) If a party wishes to expand the scope of an expert's testimony beyond those topics identified in the declaration, it must successfully move for leave to amend its expert witness declaration. (Code Civ. Proc., § 2034.610, subd. (a)(2); see *Bonds,* at p. 145.) Otherwise, expert opinion offered by any party who has "unreasonably failed" to comply with these requirements "shall be excluded." (Code Civ. Proc., § 2034.300; see *Bonds,* at pp. 146-147.)

The Supreme Court explained the purpose of the expert declaration requirements in *Bonds v. Roy, supra,* 20 Cal.4th 140. There, the defendant in a medical malpractice case submitted a declaration stating the expert would testify to damages and then sought at trial to expand the expert's opinion to include standard of care. In upholding the trial court's ruling excluding the standard-of-care testimony at trial, the Court explained: "[T]he very purpose of expert witness discovery statute is to give fair notice of what an expert will say at trial. This allows the parties to assess whether to take the expert's deposition, to fully explore the relevant subject area at any such deposition, and to select an expert who can respond with a competing opinion on that subject area." (*Bonds*, at pp. 146-147.) From the perspective of an opposing party, an expert declaration that omits or inaccurately describes the substance of an expert's expected testimony is akin to a failure to disclose the expert at all and subject to the same consequences of exclusion. (See *ibid.* [from the perspective of the opposing party,"[i]t makes little practical difference whether the party proffering the expert testimony failed to submit an expert witness declaration or submitted an inaccurate one"].)

Raskov acknowledges his expert declaration did not identify legal malpractice or standard of care as topics of Schoenherr's expert testimony. However, citing language in *Kennemur v. State of California* (1982) 133 Cal.App.3d 907, 919 regarding the effect of former Code of Civil Procedure section 2037.3, the predecessor to Code of Civil Procedure section 2034.260, he asserts a party may disclose the nature of the expert's testimony either in the declaration or at deposition. (See *Kennemur,* at p. 919 ["[i]n our

14

view [former Code Civ. Proc., § 2037.3's requirement that witness list include "the general substance of the testimony which the witness is expected to give] means the party must disclose either in his witness exchange list or at his expert's deposition, if the expert is asked, the substance of the facts and the opinions which the expert will testify at trial"]; accord *Williams v. Volkswagenwerk Aktiengesellschaft* (1986) 180 Cal.App.3d 1244, 1257-1258; *Easterby v. Clark* (2009) 171 Cal.App.4th 772, 779.) Contrary to Raskov's contention, neither *Kennemur* nor the cases quoting its language permit a party to disclose the expert's opinion for the first time in deposition. Rather, the *Kennemur* court simply acknowledged that, when the substance of the expert's testimony is disclosed in deposition and the opposing party has had sufficient opportunity to cross-examine the expert and conduct its own discovery or retain its own expert to counter the testimony, the deficiency in the declaration may be harmless, rather than an "unreasonable" failure to comply with discovery requirements. (See *Kennemur,* at p. 919, fn. 5 [if appellant had disclosed substance of expert's opinion at his deposition, "statutory noncompliance would have been harmless since respondent would have been afforded the opportunity to prepare for cross-examination and rebuttal of Mitchell's opinion"]; see also *Stanchfield v. Hamer Toyota, Inc.* (1995) 37 Cal.App.4th 1495, 1504 ["[T]he exclusion sanction applies only if noncompliance with the statute was 'unreasonable.' This limitation 'may prevent parties from waiting until trial to raise objections that could have been raised beforehand.'"]; Weil & Brown, Cal. Practice Guide*:* Civil Procedure Before Trial (The Rutter Group 2014) ¶ 8:1713, p. 8J-31 (rev. #1, 2009) [party seeking exclusion is not required to show prejudice; however, "absent some showing of prejudice, the court may be more likely to find that the failure to comply with the expert witness disclosure requirements was *not* 'unreasonable'"].)

Had Schoenherr actually opined on Stapke & Harris's professional negligence at his deposition, the trial court might have ruled differently on the motion in limine and permitted the testimony on standard of care since, in those circumstances, Stapke & Harris would have had ample time after the disclosure to object to the expanded testimony, continue the deposition or retain its own expert in the area. (See *Easterby v.*

15

*Clark*, *supra,* 171 Cal.App.4th at p. 780 ["[D]efendants in this case had the opportunity to take Regan's deposition in light of his changed opinion and prepare for cross-examination and rebuttal of his testimony. The elements of unfair surprise and prejudice . . . are entirely absent in this case."].)[6] But Schoenherr did not opine on the issue of Stapke & Harris's legal malpractice. In fact, he expressly disavowed having any opinion whether Stapke & Harris had performed negligently in the probate action, explaining he lacked sufficient facts to form such an opinion; he also confirmed he did not intend to learn the facts of the case or form any new or different opinions other than those he testified to in his deposition. (See *Jones v. Moore* (2000) 80 Cal.App.4th 557, 565 ["[w]hen an expert deponent testifies as to specific opinions and affirmatively states those are the only opinions he intends to offer at trial, it would be grossly unfair and prejudicial to permit the expert to offer additional opinions at trial"]; *Kennemur v. State of California*, *supra*, 133 Cal.App.3d at pp. 912-913 [when expert disclaimed at his deposition having an opinion on causation, court did not err in precluding him from testifying to that issue at trial].)

Although Schoenherr did testify generally at his deposition, based on a hypothetical set of facts presented to him by Raskov's counsel, that viewing an appraisal for the first time seven days before trial was beneath the standard of care, that minimal testimony was hardly sufficient to put Stapke & Harris on notice of Raskov's intent to expand the scope of Schoenherr's opinion at trial, particularly in light of his testimony disclaiming any opinion on Stapke & Harris's negligence. Significantly, Raskov had several months prior to trial to seek leave to amend and augment the expert declaration or otherwise make that intent clear. He did not do so. While the court certainly could have permitted the testimony in question, its determination that Raskov's failure to comply

---

[6] At the beginning of the hearing on the motion in limine, before it had an opportunity to consider Schoenherr's deposition testimony, the trial court stated, "If your claim is that their side was given fair notice that he was going to testify on standard of care and that they chose—the expert was offered up for deposition and that they chose not to take him for deposition, then if you can show that then you probably have a good point."

16

with the discovery requirements was unreasonable under the circumstances was well within its discretion. (See *Easterby v. Clark, supra,* 171 Cal.App.4th at p. 778 [court's ruling excluding evidence for noncompliance with discovery rules reviewed for abuse of discretion]; *Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950 [same]; see generally *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 972 [trial court abuses its discretion only when its ruling exceeds the bounds of reason].).[7]

### 3. *Substantial Evidence Supported the Damage Award*

Raskov contends the jury's award of $39,523.87 was not supported by substantial evidence.[8] In support of this claim, he highlights discrepancies between the deposition and trial testimony of Stapke & Harris's billing expert, Kim Karelis, as well as discrepancies between Karelis's testimony as to what was owed and the declaration filed by Mark Stapke supporting his attorney fee request in the probate action. We need not belabor this contention. Karelis testified, based on a comparison between the invoices

---

[7]    Raskov also objects to the court's refusal to instruct the jury on legal malpractice. Because the court's ruling excluding evidence on standard of care was proper, it had no duty to instruct on that issue at trial. (See *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 ["[a] party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence"].)

[8]    We review challenges to the sufficiency of the evidence to support the verdict for substantial evidence. Under the substantial evidence test, "'[W]e are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment. . . . "In brief, the appellate court ordinarily looks only at the evidence supporting the successful party, and disregards the contrary showing." [Citation.] All conflicts, therefore, must be resolved in favor of the respondent.'" (*Campbell v. Southern Pacific Co.* (1978) 22 Cal.3d 51, 60, ital. omitted; accord, *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.) "When we consider whether the evidence was sufficient to support the . . . verdict, we review the entire record in the light most favorable to the judgment to determine whether there are sufficient facts, contradicted or uncontradicted, to support the judgment. [Citation.] Substantial evidence is evidence that is reasonable and credible. In evaluating the evidence, we accept reasonable inferences in support of the judgment and do not consider whether contrary inferences may be made from the evidence." (*Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes* (2010) 191 Cal.App.4th 435, 462-463.)

17

submitted and the payments Raskov and Aronson made, that Raskov and Aronson owed $39,523.87. The discrepancies Raskov emphasizes on appeal were identified by him and argued at trial; the jury resolved the conflicts in the evidence against him. Substantial evidence supports the verdict.

4. *The Court Did Not Err in Awarding Prejudgment Interest under Civil Code Section 3287, subdivision (*a*)*

Civil Code section 3287, subdivision (a), provides for the payment of prejudgment interest to every person entitled to receive damages that are certain or capable of being made certain by calculation if the right to receive such damages vested on a particular day. (See *Cassinos v. Union Oil Co.* (1993) 14 Cal.App.4th 1770, 1790 ["[t]he policy underlying authorization of an award of prejudgment interest is to compensate the injured party—to make that party whole for the accrual of wealth which could have been produced during the period of loss"].) "The test for recovery of prejudgment interest under [Civ. Code] section 3287, subdivision (a) is whether defendant (1) actually knows the amount of damages owed plaintiff, or (2) could have computed that amount from reasonably available information." (*KGM Harvesting Co. v. Fresh Network* (1995) 36 Cal.App.4th 376, 391; accord, *Chesapeake Industries, Inc. v. Togova Enterprises*, *Inc.* (1983) 149 Cal.App.3d 901, 907.) Prejudgment interest under Civil Code section 3287, subdivision (a), is not available when the amount due depends on a judicial determination based on conflicting evidence and is not readily ascertainable from the truthful data supplied by the claimant to the debtor. (*Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 960 (*Wisper*).) Absent a factual dispute, we independently determine whether and when the damages were certain or capable of being made certain by calculation for purposes of Civil Code section 3287, subdivision (a). (*KGM Harvesting,* at p. 391, fn. 8; *Employers Mutual Casualty Company v. Philadelphia Indemnity Insurance Co.* (2008) 169 Cal.App.4th 340, 346.)

Raskov contends the court erred in awarding Stapke & Harris any prejudgment interest because the amount of the claim was uncertain prior to the jury's verdict. He asserts this uncertainty is reflected in Stapke & Harris's own contradictory statements as

to the amount due: In its December 2006 request for arbitration, Stapke & Harris claimed fees due in the amount of $48,357.89; during the arbitration and in its subsequent cross-complaint in the trial de novo, it demanded $43,013.97; and during trial its expert testified that the amount owed was $39,523.87 (the amount the jury awarded). The inconsistencies Raskov identifies, however, relate to credits he claimed for payments he had made, an amount readily ascertainable by reviewing the cancelled checks. None is sufficient to make the damage claim uncertain for purposes of awarding prejudgment interest under Civil Code section 3287, subdivision (a). (Compare *KGM Harvesting Co. v. Fresh Network, supra,* 36 Cal.App.4th at p. 391 ["[t]he fact that an error of approximately 5.5 percent was made in the original calculations does not make the damages uncertain"; plaintiff entitled to prejudgment interest]; and *Marine Terminals Corp. v. Paceco, Inc.* (1983) 145 Cal.App.3d 991, 997-998 [6.5 percent discrepancy between relief requested and evidence of damages at trial not make the damages uncertain; "[t]he errors . . . were minor and could have been easily corrected at the time the demand for payment was made"]; with *Wisper, supra,* 49 Cal.App.4th at p. 961 [where plaintiff recovered "a mere 25 percent of its claimed damages," the "significant disparity between that which was sought and that which was ultimately found appropriate" demonstrated the damage claim was neither certain nor readily ascertainable].) The court determined the amount of fees owed became readily ascertainable by November 1, 2006, when, as Karelis testified, the outstanding balance of $39,523.87 could be calculated from reviewing Stapke & Harris's invoices and Raskov's and Aronson's cancelled checks. The court did not err in awarding prejudgment interest pursuant to Civil Code section 3287, subdivision (a).[9]

---

[9] Raskov does not argue his set-off claim based on allegations of malpractice made the damages uncertain, nor would such a claim have merit. (See *Hansen v. Covell* (1933) 218 Cal. 622, 629 ["debtor may not defeat the creditor's right to interest on a liquidated sum by setting up an unliquidated claim as an offset"]; *Great Western Drywall, Inc. v. Roel Constr. Co., Inc.* (2008) 166 Cal.App.4th 761, 768 ["The '"mere pleading of unliquidated counterclaims does not render unliquidated an otherwise certain or

**DISPOSITION**

The judgment is affirmed.  Stapke & Harris is to recover its costs on appeal.


PERLUSS, P. J.


We concur:


ZELON, J.


IWASAKI, J,[*]

---

determinable debt owing to the plaintiff . . . .  The unliquidated counterclaims are given treatment as discounts, not as payments made at the time the debt is due."'"'].)

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.